**Thomas Joe SPENCE, Appellant,**

v.

**STATE of Indiana, Appellee.**

No. 1280S467.

Supreme Court of Indiana.

Dec. 21, 1981.

Harriette Bailey Conn, Public Defender, Jay Rodia, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

On July 9, 1980, a jury found Thomas Joe Spence guilty of Robbery Causing Bodily Injury. Spence was sentenced to a term of twenty (20) years. His Motion to Correct Errors was denied on October 9, 1980. This appeal followed.

Harry Fryer was attacked by two people who struck him with rocks and took his briefcase on August 22, 1979. Fryer had a routine of carrying large amounts of cash from his house to work on Wednesday mornings at about 4:30 a. m. He estimated his losses in cash and negotiable checks as forty-two hundred dollars ($4,200.00). Fryer was taken to St. Elizabeth Hospital where a number of photographs were taken of his injuries.

Brian Henderson was questioned by police about the robbery. Henderson testified that he met Thomas Joe Spence and that they knew that each Wednesday Fryer would leave his home to deliver the week's cash receipts for transport to Fryer's company's main office in Chicago. Henderson testified that he and Spence picked up rocks and that Spence hit Fryer on the head with his rock and grabbed Fryer's briefcase. After a number of blows to Fryer's head and body, Fryer let go of the briefcase and the two fled with it. Henderson received eight hundred and twenty ($820.00) in cash when Spence divided up the contents of a bank bag from the briefcase. Henderson admitted his part in the crime and said that he figured if he admitted his guilt he would be given a break at the Juvenile Court. Henderson was fifteen years old. Kathleen Henderson, Brian Henderson's sister, and Spence's girlfriend, said she found some extra cash in her purse and that Spence told her he got the money by robbing "Harry" who was the man for whom Spence's brother had worked.

Appellant alleges that the court erred in admitting certain photographs and in refusing two instructions.

### I.

Defendant Spence moved to suppress photographs taken of the victim, Harry Fryer, at the hospital. He specifically objects to the admission of State's Exhibits Nos. 5, 6, 8, 12, 14 and 15. He objected that the purpose of the photographs was to inflame the jury. He argues that the victim and the treating physician testified as to the extent, severity and treatment of Fryer's injuries and that the admission of photographs was unneeded, cumulative and prejudicial.

Initially, we note that only photocopies of the photographs are found in the record, therefore appellant has not provided us with a proper record to determine the effects of the photographs themselves. It cannot be determined whether they were in color or black and white. It is also impossible to determine fine detail on them. However, it is apparent that the photographs depict the victim, who is alive, sitting up with head injuries, views of his head and photos showing him lying down with his elbow and injury thereon displayed. Another photo shows the victim's legs.

Photographs of the victim and his injuries were admissible. Photographs are admissible as evidence when a witness would be permitted to describe what they depict and the photograph is an accurate representation of what it purports to represent. These photographs were relevant. Victim Fryer, physician Debranin and Officer Mathews testified concerning the injuries depicted in the photographs. The trial court did not abuse its discretion in admitting these exhibits. *James v. State*, (1980) Ind., 411 N.E.2d 618. *Chambers v. State*, (1979) Ind., 392 N.E.2d 1156.

### II.

Appellant also claims the trial court erred when it refused to give Defendant's Tendered Final Instructions Nos. 2 and 3.

Those instructions were:

**DEFENDANT'S TENDERED INSTRUCTION NO. *2*:**

An accomplice who turns State's evidence and agrees to cooperate with the State in consideration of leniency or the dismissal of charges, to be realistic, is being bribed regardless of the fact that public policy has proved such action in the interest of effective law enforcement and, therefore, such accomplice's testimony, though not necessarily false, is highly suspect. Such testimony by an accomplice should be highly scrutinized by the jury.

Record at 63.

**DEFENDANT'S TENDERED INSTRUCTION NO. *3*:**

The uncorroborated testimony of an alleged accomplice is sufficient to sustain a conviction of a Defendant if believed, however, such testimony of an accomplice should be scrutinized carefully.

Record at 64.

Very similar instructions were considered and rejected in *Drollinger v. State*, Ind., 408 N.E.2d 1228. The language of these instructions comes from the case of *Newman v. State*, (1975) 263 Ind. 569, 334 N.E.2d 684. As we noted in *Drollinger, supra*, "The mere fact that certain language or expression are used in the opinions of this Court to reach its final conclusion does not make it proper language for instructions to a jury. *Jacks v. State*, (1979) Ind., 394 N.E.2d 166, 174." *Drollinger, supra*, 408 N.E.2d 1228, 1241.

Accomplice Henderson was questioned several times at trial about his possible bias. He repeatedly answered that he was never offered any deals in return for helping to prosecute the defendant and that although he thought it might help his own position, he didn't know. The court gave general instructions on the credibility of witnesses and weighing evidence which correctly stated the law. There is no error on this issue. *Drollinger, supra*.

Judgment affirmed.

All Justices concur.