Tracey T. **DUNLOP**, Defendant–
Appellant,

v.

**STATE of Indiana, Plaintiff–Appellee.**

No. 49S00–9704–CR–273.

Supreme Court of Indiana.

Feb. 18, 2000.

Patricia Caress McMath, Indianapolis, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Christopher L. LaFuse, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

DICKSON, Justice

The defendant, Tracey T. Dunlop, appeals his convictions for the murder[1] of Carolyn Hawkins, two counts of robbery, both as class B felonies,[2] and two counts of criminal confinement, both as class B felonies,[3] and his sentence of life imprisonment without parole. In this direct appeal, he claims: (1) erroneous instruction on the defense of voluntary intoxication; (2) erroneous instruction on life without parole; and (3) improper sentence.

### Instruction on Voluntary Intoxication Defense

The defendant first contends that the trial court erroneously instructed the jury on the defense of voluntary intoxication. He argues that it invaded the province of the jury, mandated a conviction upon the finding of certain facts, and mandated a minimum degree of intoxication, in violation of Article I, Section 19 of the Indiana Constitution.[4]

■■■ The defendant challenges the following language from Final Instruction No. 34 regarding the defense of voluntary intoxication, given over his objection at trial:

Mere intoxication is not sufficient unless there is some mental incapacity resulting therefrom as will render a person incapable of thinking deliberately and

medi[t]ating rationally. A defendant should not be relieved of responsibility if he could devise a plan, operate equipment, instruct behavior of others or carry out acts requiring physical skill.

Record at 208. Citing *Curran v. State*, 675 N.E.2d 341, 344 (Ind.Ct.App.1996), the defendant contends that this instruction impermissibly invaded the province of the jury, violating Article I, Section 19 by mandating a conviction upon the finding of certain facts and by requiring the jury to find specific facts in order to accept the voluntary intoxication defense.

The *Curran* court found that this same instruction invaded the province of the jury in violation of Article I, Section 19 of the Indiana Constitution because it " '[bound] the minds and consciences of the jury to return a verdict of guilty upon finding certain facts,' " *Curran*, 675 N.E.2d at 344 (quoting *Pritchard v. State*, 248 Ind. 566, 575, 230 N.E.2d 416, 421 (1967)),[5] and because it "improperly required a certain degree of intoxication be proven before the jury could accept the defense." *Id.* Nevertheless, the *Curran* court held that the erroneous instruction was harmless because "the evidence is such that the jury could not have properly found that Curran was so intoxicated that he was incapable of forming the requisite criminal intent." 675 N.E.2d at 345. In *White v. State*, 675 N.E.2d 345 (Ind.Ct.App.1996), the Court of Appeals addressed the same issue and found a similar instruction likewise erroneous but not harmless in light of the evidence.

1. IND.CODE § 35–42–1–1 (1993).

2. IND.CODE § 35–42–5–1 (1993).

3. IND.CODE § 35–42–3–3 (1993).

4. Section 19 provides: "In all criminal cases whatever, the jury shall have the right to determine the law and the facts."

5. *Pritchard* is principally concerned with instruction language that is mandatory in nature, thereby taking from a jury its right to

determine the facts and the law under Section 19. *Pritchard*, 248 Ind. at 575, 230 N.E.2d at 421. The voluntary intoxication instruction in the present case does not contain directive language equivalent to that in *Pritchard*, 248 Ind. at 568, 230 N.E.2d at 417 ("then you shall find such defendant guilty"). *But see Parker v. State*, 698 N.E.2d 737, 742 n. 9 (Ind.1998).

▪ A contrary view was recently expressed in *Cheshier v. State,* which expressly disapproved of *Curran.* 690 N.E.2d 1226, 1228 n. 2 (Ind.Ct.App.1998). The *Cheshier* majority observed that we have repeatedly used the challenged language in our opinions. *Id.* at 1228 (citing *Legue v. State,* 688 N.E.2d 408, 410 (Ind. 1997); *Miller v. State,* 541 N.E.2d 260, 263 (Ind.1989); *Terry v. State,* 465 N.E.2d 1085, 1088 (Ind.1984)). *See also Horan v. State,* 682 N.E.2d 502, 509 (Ind.1997). As Judge Sullivan noted in his separate opinion concurring in result in *Cheshier,* however, in none of these cases did we approve of a jury instruction containing this language. 690 N.E.2d at 1229. Rather, we were evaluating whether the evidence supported the giving of an intoxication instruction or was sufficient for the resulting conviction. While articulating our appellate rationale for these issues, we did not intend to create a trial standard for application by juries. The mere fact that language appears in appellate opinions does not necessarily make it proper for jury instructions. *See Spence v. State,* 429 N.E.2d 214, 216 (Ind.1981); *Meek v. State,* 629 N.E.2d 932, 933 (Ind.Ct.App.1994). *Cf. Myers v. State,* 532 N.E.2d 1158, 1159 (Ind.1989). We hold that it was error to instruct the jury that the intoxication defense was unavailable if the defendant "could devise a plan, operate equipment, instruct behavior of others or carry out acts requiring physical skill." Record at 208.

As noted in *Curran,* however, such an erroneous instruction will not require reversal on appeal if we find the error to be harmless in light of the trial evidence. 675 N.E.2d at 344. The evidence at trial included the defendant's audio-taped statement given to police shortly after he was taken into custody. In the defendant's statement, he detailed the place where he obtained the knife before he went to the victim's home, the sequence of events surrounding the stabbing, the locations where he found each item of jewelry he took from the home, and where the police would find the items he did not sell for cocaine. Having obtained a knife from a jar under the microwave in his mother's kitchen, he then took his mother's bicycle and rode to the victim's house. He knocked on her door, entered, and asked where her children were. Learning that the children were asleep, he began to stab the victim, but one of the children entered while he was stabbing the victim. The victim told her daughter to run out the back door and tried to get herself out the front door, but the defendant grabbed the child and threatened to kill her because he "knew [the victim] wouldn't go out that door and sacrifice her daughter's life like that [be-]cause ... she [was] probably thinking ... [I would] stab [her daughter] too." Record at 568. The defendant then grabbed the daughter and demanded that she help him find money or other valuables. While they were looking for money, a younger child awoke, and the defendant tried to keep her from seeing her mother, but ran from the house when he was unable to keep the child out of the room. The defendant returned to his mother's house by bicycle. He washed the knife and replaced it in the kitchen. Noticing that his shirt was bloody, he removed it and hid it behind a chair. Then he went into the bathroom and washed blood from his hands and the rings that he had taken.

From this evidence, we conclude that a reasonable jury could not have found that the defendant was so intoxicated that he was incapable of forming the requisite intent. The instruction error was harmless.

### Instruction on Life Imprisonment Without Parole

▪ The defendant contends that the trial court erred in permitting the jury not to make a recommendation as to whether the defendant should receive life imprisonment without parole. He argues that when the jury was unable to reach a recommendation, the court should have required the jury to recommend against life imprisonment without parole. Instead, the

trial court discharged the jury without receiving any jury recommendation and proceeded to sentence the defendant to life imprisonment without parole.

The defendant cites *Burris v. State*, 465 N.E.2d 171 (Ind.1984), to support his argument that the jury does not have the option to decline to make a recommendation. In *Burris*, an instruction stated that if *each* juror found that the requisite circumstances necessary to support a recommendation for the death penalty were not present, the recommendation "may" be against the death penalty. *Id.* at 189. We held the instruction erroneous because, in the case of a unanimous vote against the death penalty, the jury has no option—it *must* report its recommendation against the death penalty. *Id.* However, *Burris* did not address the question of the jury's inability to reach any kind of recommendation, as occurred here.

The defendant further argues that the jury was given conflicting instructions regarding whether it was required to recommend against life without parole in the event it could not reach a unanimous agreement. Sentencing Phase Preliminary Instruction No. 46 included the sentence: "If you do not reach this unanimous decision [that a proven aggravating factor outweighs any mitigating factors found], you must recommend against sentencing Tracey Dunlop to life imprisonment without parole." Record at 223. In contrast, Sentencing Phase Final Instruction No. 55 stated in part: "In order to return a recommendation you must all agree." Record at 235.

The applicable statute provides: "If a jury is unable to agree on a sentence recommendation after reasonable deliberations, the court shall discharge the jury and proceed as if the hearing had been to the court alone." IND.CODE § 35–50–2–9(f) (1993). The statute does not require the

jury to recommend against life imprisonment when it cannot reach an agreement on the recommendation. Although the quoted portion of Preliminary Instruction No. 46 was inconsistent with the statute, the error favored the defendant.

Any error on this issue was therefore harmless.

### Sentencing

■ The defendant argues that the trial court erred in finding and weighing mitigating circumstances; that his sentence violates constitutional provisions prohibiting cruel and unusual punishment [6] and requiring proportionality; and that his sentence is manifestly unreasonable.

The jury found the defendant guilty on all six counts charged, but, as to Count I, it returned a verdict of guilty of murder but mentally ill at the time of the offense. The evidence established that the defendant obtained a weapon, rode his bicycle to a former co-worker's house in search of money to purchase cocaine, and placed his bicycle where it could not be seen from the street. He then went inside the house, stabbed Carolyn Hawkins twenty-seven times with a knife and threatened to harm her twelve-year-old daughter, an action which he later admitted he knew would stop Carolyn from leaving. He also forced her daughter to search the house for valuables, which he took. He then returned to his house, hid his blood-covered shirt behind a chair, and washed the knife used in the attack. Mental health professionals testified that the defendant was mentally impaired at the time of the murder as a result of drug addiction. Other evidence showed that the defendant was under the influence of drugs at the time he committed the crime, that he came from a very dysfunctional family, and that he had expressed remorse for the crime.

---

**6.** Although the defendant cites the Eighth Amendment of the U.S. Constitution, he provides no authority regarding any applicable principles and makes no separate argument.

Such claim is thus forfeited. Ind. Appellate Rule 8.3(A)(7); *Kindred v. State*, 540 N.E.2d 1161, 1168 (Ind.1989).

■ Acknowledging that the trial court properly found a valid aggravating circumstance (intentional killing committed during a robbery) and numerous mitigating circumstances, the defendant argues that the trial court failed to give sufficient weight to all the mitigators and any mitigating weight to the evidence that he could be rehabilitated and reformed. In its thoughtful sentencing decision, the trial court found and weighed as mitigating circumstances the jury's verdict of guilty but mentally ill, the defendant's dysfunctional family background, his decision not to flee the jurisdiction, and his confession and expressions of guilt and remorse.

■ The determination that a circumstance is mitigating is within the trial court's discretion, and the court is not obligated to explain why it finds a circumstance not to be mitigating. *Taylor v. State*, 681 N.E.2d 1105, 1112 (Ind.1997); *Widener v. State*, 659 N.E.2d 529, 533 (Ind.1995). The trial court is not required to give the same weight to proffered mitigating circumstances as the defendant does. *Thacker v. State*, 709 N.E.2d 3, 10 (Ind.1999); *Montgomery v. State*, 694 N.E.2d 1137, 1142 (Ind.1998); *Battles v. State*, 688 N.E.2d 1230, 1236 (Ind.1997). The trial court's determination of the proper weight to be given aggravating and mitigating circumstances and the appropriateness of the sentence as a whole is entitled to great deference and will be set aside only upon a showing of a manifest abuse of discretion. *Thacker*, 709 N.E.2d at 10; *Willsey v. State*, 698 N.E.2d 784, 796 (Ind.1998). The record of the sentencing proceeding does not demonstrate that the trial court abused its discretion in considering and weighing the mitigating evidence presented by the defendant. We find no error in the sentence imposed by the trial court.

The defendant argues that his sentence of life imprisonment without parole violates Article I, Section 16 of the Indiana Constitution, which declares in part: "Cruel and unusual punishments shall not be inflicted. All penalties shall be proportioned to the nature of the offense."

■ The constitutional prohibition against cruel and unusual punishments proscribes atrocious or obsolete punishments and is aimed at the kind and form of the punishment, rather than the duration or amount. *Ratliff v. Cohn*, 693 N.E.2d 530, 542 (Ind.1998); *Wise v. State*, 272 Ind. 498, 502, 400 N.E.2d 114, 117–18 (1980). Punishment is cruel and unusual under Article I, Section 16 if it " 'makes no measurable contribution to acceptable goals of punishment, but rather constitutes only purposeless and needless imposition of pain and suffering.' " *Ratliff*, 693 N.E.2d at 542 (quoting *Douglas v. State*, 481 N.E.2d 107, 112 (Ind.1985)). The sentence of life imprisonment without parole does not constitute cruel and unusual punishment.

■ We will find a sentence not proportional " 'only when a criminal penalty is not graduated and proportioned to the nature of an offense.' " *Conner v. State*, 626 N.E.2d 803, 806 (Ind.1993) (quoting *Hollars v. State*, 259 Ind. 229, 236, 286 N.E.2d 166, 170 (1972)). Given the circumstances presented in this case, we decline to find the penalty of life imprisonment without parole to be disproportional to the nature of the offense committed.

■ The defendant also claims that his sentence is manifestly unreasonable. A reviewing court may review and revise a criminal sentence, but only when the sentence is "manifestly unreasonable in light of the nature of the offense and the character of the offender." App. R. 17(B). To warrant modification of an otherwise proper trial court sentence, we must find it to be clearly, plainly, and obviously unreasonable. *Thacker*, 709 N.E.2d at 10; *Brown v. State*, 698 N.E.2d 779, 784 (Ind.1998); *Prowell v. State*, 687 N.E.2d 563, 568 (Ind. 1997). The sentence imposed in this case is not manifestly unreasonable.

## Conclusion

The judgment of the trial court is affirmed.

SHEPARD, C.J., and BOEHM, J., concur. SULLIVAN, J., concurs and dissents with separate opinion in which RUCKER, J., concurs.

SULLIVAN, Justice, concurring and dissenting.

I concur with the Court's opinion except as to the sentence of life without parole. The law permits sentence of life without parole only if the State proves that the mitigating circumstances are outweighed by the aggravating circumstances.[1] *See* Ind.Code § 35–50–2–9(i)(2) (Supp.1994). I do not believe the standard was met in this case.

The sole aggravating circumstance proved by the State in this case was the so-called "felony murder" aggravator—that "[the] defendant committed the murder by intentionally killing the victim while committing or attempting to commit … Robbery." *See id.* § 35–50–2–9(b)(1)(G) (Supp.1994). While this is a serious aggravator, we have never accorded it weight in the "highest range," a designation we have heretofore only given the "multiple murder" aggravating circumstance of Ind.Code § 35–50–2–9(b)(8).[2] In any event, I would assign the mitigating circumstances here—Defendant's youth, dysfunctional upbringing, drug and alcohol addiction, extreme remorse and the fact that the jury unanimously found him to be mentally ill—equal if not greater weight. I think it is also worthy of note that the jury was unable to make a unanimous recommendation in favor of a life without parole sentence.

The trial court found "there were many mitigating circumstances" in this case. First, the trial court found that "[D]efendant suffered from the effects of an extremely dysfunctional family." (R. at 1067.) I will discuss the expert testimony on this point below. Second, the trial court took into consideration that the jury unanimously found Defendant to be mentally ill.[3] Third, the trial court found that Defendant "was very remorseful" and noted that, rather than fleeing the jurisdiction, he immediately went home where he showed "signs of conscience guilt." (R. at 1070.)

In addition to the trial court's findings, I would assign mitigating weight to Defen-

1. The statute requires a finding by the trial court that "any mitigating circumstances that exist are outweighed by the aggravating circumstances," that is, the trial court must find that aggravating circumstances outweigh the mitigating circumstances. The trial court applied an erroneous standard in this case, finding it sufficient that the mitigating circumstances did not outweigh the aggravating circumstance. *See* R. at 1071 ("I cannot say in good conscience that [all of] those [mitigators] outweigh the aggravating factor."). The point is, of course, that under the statute, if the weight of the aggravating and mitigating circumstances is equal, life without parole may not be imposed; under the standard enunciated by the trial court, if the weight is equal, life without parole is available.

   While erroneous, I would not reverse or remand on this basis. First, at no point does the trial court actually find the weight of the aggravating and mitigating circumstances to be equal. Second, Defendant's counsel—one of the ablest to practice before us—does not challenge the sentence on this basis from which I infer that she was satisfied that the trial court considered the weight of the aggravating circumstance to outweigh the mitigating factors. Third, despite this error, the trial court's sentencing statement is careful and complete, showing concern for and attention to the special requirements of this particular statute.

2. *See Peterson v. State*, 674 N.E.2d 528, 543 (Ind.1996) (Dickson, J.), *cert. denied*, 522 U.S. 1078, 118 S.Ct. 858, 139 L.Ed.2d 757 (1998); *Baird v. State*, 604 N.E.2d 1170, 1182 (Ind. 1992) (DeBruler, J.), *cert. denied*, 510 U.S. 893, 114 S.Ct. 255, 126 L.Ed.2d 208 (1993); *Roche v. State*, 596 N.E.2d 896, 902 (Ind. 1992) (concurring opinion of DeBruler, J., in which Krahulik, J., joined).

3. I recognize that the trial court did not find the degree of Defendant's mental illness to entitle him to sufficient mitigating weight to overcome the aggravating circumstance. *See* R. at 1068–70.

dant's youth—he was twenty at the time of his crime—and to the expert testimony presented at trial.

At trial, Dr. Robert Smith, who holds doctorate degree in psychology, testified for the defense. Dr. Smith is a clinical psychologist and specializes in the treatment of alcohol and other drug addictions. He practices in five hospitals and maintains a full-time private practice in the Cleveland area. In Dr. Smith's opinion, Defendant suffered from a mental disease or defect at the time the killing occurred. It was also Dr. Smith's opinion that Defendant's capacity to appreciate the criminality of his conduct was impaired as a result of his intoxication and use of cocaine.

Dr. Smith's opinion was based on a two day examination of Defendant, including a diagnostic interview, a series of psychological tests, a personality test, and an assessment of Defendant's use of alcohol and drugs.[4] According to Dr. Smith's testimony, Defendant experienced a traumatic childhood, enduring a neglected home life. During his younger years, Defendant witnessed his mother abuse alcohol, marijuana, and cocaine. After his father abandoned him, his mother began a series of relationships with abusive men. At one time, Defendant saw his step-father hold a gun to his mother's head. Additionally, Defendant had a long history of serious alcohol and drug abuse. His abusive step-father introduced him to marijuana at the impressionable age of seven and by the age of fourteen, he was abusing alcohol. Defendant was placed in a foster home for several months, and afterwards resided with his grandmother whose husband was also an alcoholic. Defendant dropped out of high school at the tenth grade level.

Dr. Smith testified that Defendant suffered from several psychological disorders, cocaine dependence, cannabis dependence, alcohol abuse, and a personality disorder at the time the murder occurred. In addition, the personality test showed that Defendant had a "mixed personality disorder" meaning that Defendant suffered from two distinct disorders, paranoia and anti-social behavior. This personality test, along with an alcohol screening test, uncovered that Defendant did in fact abuse alcohol. Dr. Smith testified that Defendant could be rehabilitated.

Mr. Rick Gustafson, a psychiatric social worker who earned a masters degree in social work at Indiana University, also testified for the defense. Mr. Gustafson maintains a private practice and has counseled at psychiatric hospitals as well as chemical dependency centers. At trial, Mr. Gustafson's testimony corroborated with that of Dr. Smith's regarding Defendant's dysfunctional childhood. He testified that Defendant suffered from depression with thoughts of dying.

Dr. Rodney Deaton, a court-appointed psychiatrist, diagnosed Defendant with a psychiatric disorder called "polysubstance dependence," a disorder recognized in the Diagnostic and Statistical Manual (fourth edition). Dr. Deaton testified that a person suffering from polysubstance dependence is dependent on at least three different substances. In Defendant's case, he suffered from long-term usage of cocaine, marijuana, and alcohol that led to a "significant impairment." Dr. Deaton stated that Defendant was "clearly suffering" from this psychiatric disorder at the time the killing occurred. Dr. Deaton further testified that cocaine intoxication can produce a delusional state, recognized as a mental disorder and paranoia. Dr. Deaton also stated that alcohol can have an adverse affect on a person's ability to understand the consequences of his or her actions. Finally, Dr. Deaton testified that Defendant had expressed remorse over the killing of the victim. Another court-appointed

---

4. In particular, Dr. Smith based his evaluation on the following administered tests: the Michigan Alcoholism Screening Test, the Substance Abuse Suddel Screening Inventory Two Test, the Adult Intelligence Scale Test, and the Minnesota Multiphasic Personality Inventory Test (MMPI).

psychiatrist, Dr. Carrie Dixon,[5] found that because Defendant was under the influence of cocaine and alcohol, Defendant was not of sound mind on the night of the killings. However, it was the opinion of Dr. Dixon that Defendant was not suffering from a mental disease or defect on the night of the killings.

After weighing the numerous mitigating factors identified by the trial court and expert testimony—Defendant was twenty years old at the time of the offense, Defendant expressed extreme remorse, Defendant grew up in a severely dysfunctional family full of violence and drug abuse, Defendant suffered from cocaine, marijuana, and alcohol addictions, and Defendant suffered from personality disorders—as well as the jury's unanimous determination that Defendant was mentally ill and the jury's inability to reach a unanimous recommendation that Defendant be sentenced to life without parole, I would find that the sole aggravating circumstance does not outweigh the mitigating circumstances.

RUCKER, J., concurs.

---

**5.** Dr. Dixon also conducted an I.Q. test, the Westler Adult Intelligence Scale test, in which Defendant scored below average.