Adam C. ELLIS, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 01S00–9910–CR–632.

Supreme Court of Indiana.

Oct. 18, 2000.

Donald C. Swanson, Jr., Fort Wayne, Indiana, Attorney for Appellant.

Karen M. Freeman–Wilson, Attorney General of Indiana, Arthur Thaddeus Perry, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

SHEPARD, Chief Justice.

Appellant Adam C. Ellis appeals his conviction and sentence for murder, two counts of attempted murder, and burglary. He raises two issues in this direct appeal:

I.  Whether the trial court properly refused Ellis' tendered instructions on reckless homicide and criminal recklessness, and

II. Whether the trial court erred when it imposed maximum sentences for the convictions and ordered them served consecutively.

**Facts and Procedural History**

On the evening of August 5, 1998, Ellis was at his parents' home with a friend, Chris Richardson. Ellis and Richardson played foosball and ate pizza. In anticipation of Ellis' wife coming over, Ellis told Richardson (who had been smoking marijuana) to leave for a while so that Ellis' wife would not complain about his company.

At 12:30 a.m., now August 6th, Angie Ellis arrived to pick up their son Alec. Ellis and Angie were married at the time,

but separated. Angie was living at the home of her mother and stepfather. Ellis testified that when Angie arrived to pick up Alec she invited Ellis over to her parents' home to talk. Angie did not want to talk in front of Alec, who was still awake.

Ellis arrived at the home of Angie's parents and saw Angie on the couch kissing Matt Bebout. Ellis left and later returned carrying a .22 caliber handgun.[1]

Ellis entered Angie's parents' home, dressed in all black, and approached Bebout and Angie, who were still seated on the couch. He shot Bebout in the right cheek, and the bullet lodged in Bebout's neck. Ellis next shot Angie six times, killing her. Ellis then kicked in the bedroom door of Angie's stepfather, Curt Krauss, and shot him in the cheek and hand.

The jury found Ellis guilty of murder, two counts of attempted murder, and burglary. The trial court imposed consecutive sentences of sixty-five years for murder and fifty years for each attempted murder. It also ordered a concurrent twenty-year sentence for burglary. The sentence thus totaled 165 years.

## I. Instructions on Criminal Recklessness and Reckless Homicide

Ellis first asserts that the trial court erred when it refused his tendered instructions on criminal recklessness and reckless homicide.[2]

1. Three weeks earlier, Ellis had taped steel wool and an empty two-liter plastic bottle to the barrel of the gun to create a silencer. (R. at 846–847.) Ellis does not recall shooting the weapon. (R. at 854.)

2. Ellis' tendered instruction on criminal recklessness stated, in part:
   Included in the crime of Attempt Murder, charged in this case, is the offense of Criminal Recklessness. Criminal Recklessness is defined as follows: A person who recklessly inflicts serious bodily injury on another person commits criminal recklessness, a Class D felony. However, the offense is a Class C felony if committed by means of a deadly weapon.

Ellis' argument fails because the trial court was not required to instruct the jury on lesser included offenses based upon the analysis set forth in *Wright v. State*, 658 N.E.2d 563 (Ind.1995).

In *Wright*, we indicated that a requested instruction for a lesser included offense of the crime charged should be given if the lesser included offense is either "inherently or factually" included in the crime charged, and if, based upon the evidence presented in the case, there existed a "serious evidentiary dispute about the element or elements distinguishing the greater from the lesser offense ... [such that] a jury could conclude that the lesser offense was committed but not the greater...." *Id.* at 567.

Ellis asked the trial court to instruct the jury on reckless homicide as a lesser included offense of murder and criminal recklessness as a lesser included offense of attempted murder.

■ *Reckless Homicide.* Reckless homicide is an inherently included offense of murder. *Wright*, 658 N.E.2d at 567. The two charges are distinguished only by the lesser culpability required to prove reckless homicide.[3] *Id.* The remaining question is whether this case presented a serious evidentiary dispute with respect to an element of murder such that a jury could have concluded that the lesser offense was committed but not the greater. *Id.*

(R. at 124.)
The instruction on reckless homicide stated, in part: Included in the crime of Murder charged in this case is the offense of Reckless Homicide. Reckless Homicide is defined as follows: A person who recklessly kills another human being commits reckless homicide, a Class C felony. (R. at 128.)

3. Indiana Code § 35–42–1–1 states that a person commits murder if he "knowingly or intentionally kills another human being." Indiana Code § 35–42–1–5 states "[a] person who recklessly kills another human being commits reckless homicide...."

Ellis contends that there was a serious evidentiary dispute regarding his intent based upon his assertion of an involuntary intoxication defense.[4] He reasons that if the jury had determined that he did not have the requisite intent to commit murder, then the jury could have instead concluded that he committed reckless homicide.

Ellis' logic confuses the function of an involuntary intoxication defense.

■ Involuntary intoxication is a defense to the crime charged if, as a result of the intoxication, the defendant was unable to appreciate the wrongfulness of the conduct at the time of the offense.[5] An involuntary intoxication defense disputes the existence of intent.[6] If successful, this defense would negate culpability for any offenses Ellis committed.[7]

■ This defense does not simultaneously establish the existence of reckless conduct. Rather, a claim that a person acted "recklessly" requires showing that "he engage[d] in the conduct in plain, conscious, and unjustifiable disregard of harm that might result and the disregard involve[d] a substantial deviation from acceptable standards of conduct." Ind.Code

Ann. § 35–41–2–2 (West 1998). Therefore, to warrant a jury finding of reckless homicide, Ellis must demonstrate that he acted recklessly.

Consequently, a mere assertion of an involuntary intoxication defense does not create a serious evidentiary dispute such that a jury could conclude Ellis did not commit murder, but instead committed the lesser included offense of reckless homicide.[8] The trial court did not err by refusing to instruct the jury on reckless homicide because no serious evidentiary dispute existed.

■ *Criminal Recklessness.* We have consistently held that criminal recklessness is not an inherently included offense of attempted murder. *Wilson v. State,* 697 N.E.2d 466, 477 (Ind.1998). As for whether criminal recklessness is a factually included offense of attempted murder, *Wright,* 658 N.E.2d at 567, the answer may be discerned from the charging information.

The attempted murder counts, Count II and Count III, of the charging information stated:

4. At trial, Ellis presented testimony that Richardson put two "hits" of LSD in Ellis' slice of pizza. (R. at 903.) Ellis also presented expert testimony explaining the effects of LSD intoxication. (R. at 979.) The expert characterized LSD intoxication as "an alteration of the senses and the emotions." (R. at 1001.) The expert stated that he believed "with medical probability that [Ellis] was in an LSD intoxicated state." (R. at 997.) Based upon this information, Ellis asserted an involuntary intoxication defense. (R. at 1095.)

5. *See Heyward v. State,* 470 N.E.2d 63, 64 (Ind.1984) (finding a similar involuntary intoxication instruction, based upon previous versions of Ind.Code §§ 35–41–3–5 and 35–41–3–6(a), was correct).

6. In *Wilson v. State,* we discussed a defendant's assertion, based upon an insanity defense, that there was a "serious evidentiary dispute" regarding his intent to commit murder. 697 N.E.2d 466, 474–75 (Ind.1998). We explained that his argument was mis-

placed because "[a]ny dispute raised by the insanity defense concerns whether a defendant had any culpable intent at all. The 'serious evidentiary dispute' called for by *Wright* is a dispute over *which* offense a defendant may have committed, the lesser or the greater." *Id.* at 475. Therefore, we held that because the mere assertion of an insanity defense did not create a "serious evidentiary dispute," the trial court did not err in refusing the defendant's instructions on reckless homicide. *Id.*

7. Negating culpability would have been difficult, in light of Ellis' declared intention a few weeks earlier to kill Angie and any person that she dated, "because if he can't have her nobody can." (R. at 809–11.)

8. Note, we do not hold that an involuntary intoxication defense precludes an instruction on reckless homicide. Rather, we hold that this defense, alone, does not establish the existence of a serious evidentiary dispute so as to allow a jury to conclude that reckless homicide was committed instead of murder.

Ellis did attempt to commit the crime of Murder by knowingly or intentionally firing a deadly weapon at and against the person of [the victim], which conduct constituted a substantial step toward the commission of the crime of Murder, contrary to the form of the statutes in such cases made and provided by I.C. 35–41–5–1 and I.C. 35–42–1–1(1) and against the peace and dignity of the State of Indiana.

(R. at 46–47.) Because this charge did not include any element of reckless behavior, reckless homicide was not factually included in the crime charged.[9] The trial court did not err in refusing to instruct the jury on criminal recklessness because it was neither inherently nor factually included in the crime charged.

## II. Was the Sentence Erroneous?

*A. No Violation of Article I, Section 16.* Ellis first argues that his 165–year sentence violates Article I, Section 16 of the Indiana Constitution, which states, "Cruel and unusual punishments shall not be inflicted. All penalties shall be proportioned to the nature of the offense."[10]

In a recent examination of the purpose and scope of Section 16, we stated, "The constitutional prohibition against cruel and unusual punishments proscribes atrocious or obsolete punishments and is aimed at the kind and form of the punishment, rather than the duration or amount." *Dunlop,* 724 N.E.2d 592, 597 (Ind.2000) (citing *Ratliff v. Cohn,* 693 N.E.2d 530, 542 (Ind.1998)). In *Douglas v. State,* we indicated that cruel and unusual punishment is that which "constitutes *only* purposeless and needless imposition of pain and suffering...." 481 N.E.2d 107, 112 (Ind.1985) (emphasis added). The 165–year sentence imposed upon Ellis does not constitute cruel and unusual punishment.

As for the proportionality clause in Section 16, our *Dunlop* opinion observed, "We will find a sentence not proportional 'only when a criminal penalty is not graduated and proportioned to the nature of an offense.'" 724 N.E.2d at 597 (quoting *Conner v. State,* 626 N.E.2d 803, 806 (Ind. 1993) (citation omitted)).[11]

The record clearly indicates that the trial judge considered the nature of the offense when he fashioned the sentence.[12]

---

9. *See Wilson,* 697 N.E.2d at 477 (deciding, with respect to the analysis of a similar charge, that criminal recklessness was not factually a lesser included offense of the attempted murder).

10. Ellis also argues that the sentence imposed by the trial court was cruel and unusual punishment in violation of the Eighth Amendment of the U.S. Constitution. (Appellant's Br. at 19.) This claim is waived for failure to provide authority concerning any applicable principles and to make a separate argument as required by Ind. Appellate Rule 8.3(A)(7). *Dunlop v. State,* 724 N.E.2d 592, 600 n. 6 (Ind.2000)(citing *Kindred v. State,* 540 N.E.2d 1161, 1168 (Ind.1989)).

11. In *Clark v. State,* 561 N.E.2d 759, 765 (Ind.1990), we noted that "courts are not at liberty to set aside a legislatively sanctioned penalty because it may seem too severe to the Court. [An][a]ppellant does nevertheless have a right to have the proportionality of his penalty reviewed under the Indiana Constitution."

12. Aggravating factors included:

One, the gravity of the Defendant's committed crimes far out weighs his alleged good character and any prospect he may have had for rehabilitation. Two, the seriousness of the crimes committed by their varying nature invoke horror and repugnancy. Three, the extreme brutality with which the crimes were committed. Four, the testimony at trial shows two quotes, one, "He would kill her so that no one else could have her" [sic], second, "I will kill her and the guy she is with" [sic]. Following that, five, the intensive planning of the crimes, although very short in time, A. Changing into black clothes and gloves to commit the crimes, B. the silencer on the weapon, C. the shooting with the intent to kill two people other than Angie Ellis to eliminate possible witnesses, even kicking in the door to go into the bedroom to shoot Mr. Krauss, showed an intense planning and awareness of what he was doing. D. the shooting of Angie Ellis by firing not one bullet but six bullets into her body.

(R. at 1165.) The 165–year sentence is not disproportional to the nature of the offenses committed.

*B. Mitigating Factor Properly Omitted.* Ellis next argues that the trial court erred when it failed to find his "relatively young" age a mitigating circumstance.[13] (Appellant's Br. at 19.) Ellis was twenty-one years old when he committed the offenses.

■■■ The finding of mitigating factors is not mandatory; it rests within the discretion of the trial court. *Wingett v. State,* 640 N.E.2d 372, 373 (Ind.1994). A court is not obligated "to credit or weigh a possible mitigating circumstance as defendant suggests it should be credited or weighed." *Archer v. State,* 689 N.E.2d 678, 684 (Ind. 1997). "Only when the trial court fails to find a significant mitigator that is clearly supported by the record is there a reasonable belief that it was improperly overlooked." *Legue v. State,* 688 N.E.2d 408, 411 (Ind.1997).

■■■ Focusing on chronological age is a common shorthand for measuring culpability, but for people in their teens and early twenties it is frequently not the end of the inquiry. There are both relatively old offenders who seem clueless and relatively young ones who appear hardened and purposeful. Ellis has not persuaded us that the trial court abused its discretion in declining to give mitigating weight to the fact that he was twenty-one at the time of the crime. *See, e.g., Johnson v. State,* 725 N.E.2d 864, 868 (Ind.2000)(age of twenty does not compel finding of mitigation). *Compare Trowbridge v. State,* 717 N.E.2d 138, 149–50 (Ind.1999)(trial court abused its discretion in rejecting fourteen-year-old defendant's age as a mitigating factor).

*C. Consecutive Sentence Exceeded Statutory Limitation.* Ellis contends that the court erred in ordering consecutive

(R. at 1165–66.)

maximum sentences for murder and two counts of attempted murder.

He relies on Indiana Code § 35–50–1–2(c), which states in part:

> The court may order terms of imprisonment to be served consecutively even if the sentences are not imposed at the same time. However, except for crimes of violence, the total of the consecutive terms of imprisonment, . . . to which the defendant is sentenced for felony convictions arising out of an episode of criminal conduct shall not exceed the presumptive sentence for a felony which is one (1) class of felony higher than the most serious of the felonies for which the person has been convicted.

"Crimes of violence" is a defined term, a straightforward list, including such crimes as murder and aggravated battery. It does not include attempted murder. Ind. Code Ann. § 35–50–1–2(a)(West 1998). Ellis therefore argues that this statutory limit applies to his two attempted murder convictions, such that the total sentence for his two attempted murders should not exceed the presumptive sentence for murder, fifty-five years (one felony class higher than attempted murder).

The State responds with two arguments. First, the State claims that the limitation of consecutive sentencing does not apply because a *lesser included offense* of attempted murder, i.e. aggravated battery, is specifically listed in the statute as a crime of violence.

In support of this argument, the State relies on *Jackson v. State,* 698 N.E.2d 809 (Ind.Ct.App.1998), in which the court determined that even if the crime charged, (there, as here, attempted murder) is not specifically listed in the statute, it may nevertheless be excluded from the sentencing limitation. *Id.* at 813–14. Relying on *Johnson v. State,* 464 N.E.2d 1309, 1311 (Ind.1984), the *Jackson* court decided that

13. The court found one mitigating factor, "that there is no prior criminal record." (R. at 1165.)

aggravated battery was a lesser included offense of attempted murder because the charging information contain[ed] all the essential elements necessary to convict the defendant of battery. *Jackson*, 698 N.E.2d at 813. Consequently, the *Jackson* court held, in light of the information and the evidence presented at trial, "the restrictions of the sentencing statute do not apply...." *Id.* at 814.

Our *Johnson* opinion seems ill-suited for this purpose. The issue in *Johnson* was whether aggravated battery could be a lesser included offense of attempted murder as part of its determination that a jury instruction stating the claim was proper. *Johnson*, 464 N.E.2d at 1310–11.

A better analysis of the consecutive sentencing statute appears in *Ballard v. State*, 715 N.E.2d 1276 (Ind.Ct.App.1999). In *Ballard*, the issue was whether battery as a class C felony was intended to be included as a crime of violence. *Id.* at 1279. In considering whether the statute was ambiguous and required interpretation, the court stated, "[T]he statute is clear. The legislature delineated the exact crimes by name and citation that were to be considered violent crimes." *Id.* at 1280. The court observed that if the legislature had intended to include other crimes, then the offense "would have appeared in [the] Indiana Code section." *Id.* We agree.

Second, the State argues that Ind.Code § 35–50–1–2(c) does not apply at all as long as *any* of the convictions for which Ellis received consecutive sentences was a crime of violence. This argument relies on *Payne v. State*, 688 N.E.2d 164 (Ind.1997).

In *Payne*, and in *Greer v. State*, 684 N.E.2d 1140 (Ind.1997), we examined a previous version of the statute in the course of determining whether various convictions fell within the sentencing limitation. The statute then in effect exempted "murder and felony convictions for

which a person receives an enhanced penalty because the felony resulted in serious bodily injury" from the limitation. *Payne*, 688 N.E.2d at 165; *Greer*, 684 N.E.2d at 1141.[14] We applied a multiple step process to facilitate this determination. The second step of inquiry questioned whether any of the consecutively sentenced convictions satisfied the statutory exemption. *Payne*, 688 N.E.2d at 166.

In *Payne* and *Greer*, the challenged consecutive sentences were either all covered by the limit or all not covered. *Payne*, 688 N.E.2d at 166; *Greer*, 684 N.E.2d at 1142–43. We therefore were not called upon to decide how the statute is applied when less than all of the crimes on which sentencing is being imputed are covered.

■ Construction of the statute is necessary because it involves some ambiguity as to whether the existence of one crime of violence is sufficient to exempt each of the consecutively sentenced convictions from the statutory limitation.

■ "[T]he rule of lenity requires that criminal statutes be strictly construed against the State." *Walker v. State*, 668 N.E.2d 243, 246 (Ind.1996)(citing *Bond v. State*, 515 N.E.2d 856, 857 (Ind.1987)). Adherence to this rule requires that we interpret the statute to exempt from the sentencing limitation (1) consecutive sentencing among crimes of violence, and (2) consecutive sentencing between a crime of violence and those that are not crimes of violence. However, the limitation should apply for consecutive sentences between and among those crimes that are not crimes of violence.

■ Therefore, the trial court erred when it ordered Ellis' sentences for the two counts of attempted murder to be served consecutively for a total term of 100 years. This portion of the sentence exceeded the statutory limitation. The limitation should have been fifty-five years for

**14.** This language has since been repealed and replaced with the list now at issue in this case.

consecutive sentencing, i.e., the presumptive sentence for the felony one class higher than attempted murder.

■■■ The trial court did not err, however, by ordering the murder sentence served consecutively to the two counts of attempted murder without limitation. Therefore, Ellis may properly be sentenced for sixty-five years for murder, to be served consecutively with a fifty-five year sentence for the attempted murders, resulting in a total sentence of one hundred and twenty years.

## Conclusion

We reverse the decision of the trial court in part and affirm in part, and remand for sentencing as indicated.

SULLIVAN and RUCKER, JJ., concur.

BOEHM, J., dissents in part with separate opinion in which DICKSON, J., concurs.

BOEHM, J., dissenting in part.

I concur in Part I of the majority's opinion but respectfully dissent from the majority's conclusion that the trial court erred in imposing consecutive sentences for the ·multiple attempted murders. Indiana Code Section 35–50–1–2 limits a trial court's ability to impose consecutive sentencing for multiple crimes which arise out of a single "episode of criminal conduct." This limitation does not apply to "crimes of violence," a term defined in the statute to include murder, all Class A felonies with four exceptions,[15] all Class B

felonies with three exceptions,[16] and involuntary manslaughter and reckless homicide, both Class C felonies. The majority concludes that because the statutory list of "crimes of violence" does not include "attempted murder," the trial court's imposition of consecutive fifty-year sentences for Ellis' two attempted murder convictions was erroneous. For the reasons given below, I believe the statute includes attempted murder as a "crime of violence" where its commission includes a lesser offense that is itself a "crime of violence." That is the case here where the attempted murders were also aggravated batteries because the two victims' sustained serious bodily injuries. I would hold the limitation in Indiana Code Section 35–50–1–2 inapplicable.

I do not agree with the majority that the term "crimes of violence" is unambiguous in its omission of attempted offenses. Although this is the first case in which this Court has considered whether attempted murder is a "crime of violence" under Indiana Code Section 35–50–1–2, the Court of Appeals has published two opinions on the issue, with very different results. In *Maxwell v. State*, the Court of Appeals held that the current statute is unambiguous and that because attempted murder is not included in the list of "crimes of violence" it is subject to the limitation on consecutive sentencing. 731 N.E.2d 459, 464 (Ind.Ct.App.2000). However, in 1998, the Court of Appeals held that the trial court was not prohibited from imposing consecutive sentences where the defendant could have been convicted of aggravated

---

15. The following Class A felonies are defined as crimes of violence: voluntary manslaughter (Ind.Code § 35–42–1–3); kidnapping (Ind. Code § 35–42–3–2); rape (Ind.Code § 35–42–4–1); criminal deviate conduct (Ind.Code § 35–42–4–2); child molesting (Ind.Code § 35–42–4–3); robbery (Ind.Code § 35–42–5–1); and burglary (Ind.Code § 35–43–2–1). In addition to attempted murder, three Class A felonies are not on the list: vicarious sexual gratification (Ind.Code § 35–42–4–5); sexual misconduct with a minor (Ind.Code § 35–42–4–8); and arson (Ind.Code § 35–43–1–1).

16. The following Class B felonies are defined as crimes of violence: voluntary manslaughter (Ind.Code § 35–42–1–3); aggravated battery (Ind.Code § 35–42–2–1.5); rape (Ind.Code § 35–42–4–1); criminal deviate conduct (Ind.Code § 35–42–4–2); child molesting (Ind.Code § 35–42–4–3); robbery (Ind.Code § 35–42–5–1); and burglary (Ind.Code § 35–43–2–1). Three Class B felonies are not on the list: causing suicide (Ind.Code § 35–42–1–2); carjacking (Ind.Code § 35–42–5–2); and arson (Ind.Code § 35–43–1–1).

battery for the acts that led to his multiple convictions of attempted murder. The Court of Appeals reasoned that because aggravated battery is explicitly included in the list of "crimes of violence," attempted murder—or at least the attempted murder before the court was included by implication. *Jackson v. State,* 698 N.E.2d 809, 813–14 (Ind.Ct.App.1998).

In my view, there is no "plain, ordinary and usual meaning" of this statute without resorting to other rules of construction. Familiar rules are relevant here. The goal of statutory construction is to determine, give effect to, and implement the intent of the legislature. *Collier v. Collier,* 702 N.E.2d 351, 354 (Ind.1998). The statute is examined as a whole and it is often necessary to avoid excessive reliance on a strict literal meaning or the selective reading of individual words. *Id.*; *Park 100 Dev. Co. v. Indiana Dep't of State Revenue,* 429 N.E.2d 220, 222 (Ind.1981). The legislature is presumed to have intended the language used in the statute to be applied logically and not to bring about an unjust or absurd result. *Riley v. State,* 711 N.E.2d 489, 495 (Ind.1999). We conventionally construe penal statutes strictly against the State, *Smith v. State,* 675 N.E.2d 693, 697 (Ind.1996), but they are not to be read so narrowly that they exclude cases they fairly cover, *Cape v. State,* 272 Ind. 609, 613, 400 N.E.2d 161, 164 (1980).

The basic purpose of this episode statute seems clear to me. By defining "crimes of violence" as a category of crimes not subject to the consecutive sentencing limit, the legislature demonstrated its intent to differentiate between two kinds of criminal acts—offenses against the person and offenses against property—and to restrict prosecutorial "piling on" as to the latter. Without exception, the defined "crimes of violence" are offenses against the person. Even robbery and burglary, which are essentially offenses against property, are included only when they reach the level of Class A or B felonies, that is, when they

are committed with a deadly weapon or result in bodily injury. Of the category of offenses against the person, the only Class A or B felonies that are excluded from the definition of "crimes of violence" are Class A and B vicarious sexual gratification and Class A and B sexual misconduct with a minor. However, those two crimes, if they rise to the level of a Class A or B felony, may be charged as Class A or B rape or criminal deviate conduct, both of which are excepted from the consecutive sentencing statute. As a result, virtually every offense against the person that could result in the conviction of a Class A or B felony is a "crime of violence." An attempted murder, requiring the specific intent to take a life where the substantial step to that end is itself a battery resulting in severe bodily injury is surely as much a "crime of violence" as many others on the list.

The historical evolution of Indiana Code Section 35–50–1–2 also strongly suggests that the legislature intended an attempted murder accomplished by an aggravated battery to be excepted from the limitation on consecutive sentencing. The original statute addressing consecutive or concurrent sentencing was added to the Code in 1976. It simply gave trial courts broad authority to determine whether sentences should be served concurrently or consecutively. Ind.Code § 35–50–1–2 (1977). The restriction on consecutive sentences for crimes arising from a single episode of criminal conduct was added to the statute in 1994:

> (a) Except as provided in subsection (b), the court shall determine whether terms of imprisonment shall be served concurrently or consecutively. The court may consider aggravating and mitigating circumstances in IC 35–38–1–7.1(b) and IC 35–38–1–7.1(c) in making a determination under this subsection. The court may order terms of imprisonment to be served consecutively even if the sentences are not imposed at the same time. However, except for murder and felony convictions for which a person receives

an enhanced penalty because the felony resulted in serious bodily injury if the defendant knowingly or intentionally caused the serious bodily injury, the total of the consecutive terms of imprisonment, exclusive of terms of imprisonment under IC 35–50–2–8 and IC 35–50–2–10, to which the defendant is sentenced for felony convictions arising out of an episode of criminal conduct shall not exceed the presumptive sentence for a felony which is one (1) class higher than the most serious of the felonies for which the person has been convicted.

Ind.Code § 35–50–1–2 (1994). The approach of the 1994 statute was clear. A trial court's ability to impose consecutive sentences for crimes arising out of a single episode was restricted. But that restriction did not apply to a series of violent felonies committed "knowingly or intentionally" and resulting in "serious bodily injury." Only a few of the most serious felonies were subject to the harsher consecutive sentencing rules. By virtue of their statutory elements, murder and aggravated battery could result in consecutive sentences. Attempted murder, kidnapping, rape, criminal deviate conduct, child molesting, robbery, burglary, and arson, were excepted from the restriction only if they resulted in "serious bodily injury." Under the 1994 statute, Ellis' convictions for the deliberate acts of shooting Matt Bebout in the head and Curt Krauss in the head and the hand would clearly have been excepted from the limitation on consecutive sentences for crimes arising out of a single episode. *Greer v. State*, 684 N.E.2d 1140, 1142 n. 7 (Ind. 1997) (applying the 1994 statute: "we hold that the statutory limitation will apply to an attempted murder conviction unless the defendant received 'an enhanced penalty because the felony resulted in serious bodily injury if the defendant knowingly or intentionally caused the serious bodily injury' ").

In 1995, the legislature amended the statute to its current form. It changed the description of crimes that are excepted from the limitation on consecutive sentencing to "crimes of violence" and created the list of those crimes. In doing so, the legislature significantly broadened the exception to permit consecutive sentences for many crimes that were not excepted by the 1994 language. Many of the crimes added to the excepted list do not necessarily result in serious bodily injury, or may be committed with a lesser degree of mens rea. It seems obvious to me that the legislature's 1995 changes, which greatly expanded the crimes excepted from the limit on consecutive sentencing, did not simultaneously intend to remove the exception for attempted murders resulting in serious bodily injury.

In analyzing the 1994 version of the statute, we noted that:

> It appears to us that the legislature's intent with the statute here was to limit the use of consecutive sentences except where serious bodily injury occurred. Because the crime of attempted murder will at times involve serious bodily injury (as here) and at times not (as where a defendant fires a weapon at the victim but misses), we think it more consistent with the legislature's intent to treat attempted murder as a felony distinct from murder.

*Greer*, 684 N.E.2d at 1142 n. 7. We thus recognized that many attempted murders are also aggravated batteries, i.e. batteries resulting in serious bodily injury. Aggravated battery is included in the list of "crimes of violence." If an aggravated battery is "factually included," to borrow a phrase from *Wright v. State*'s explanation of the right to an instruction on lesser included offenses, 658 N.E.2d 563, 567 (Ind.1995), I would find an attempted murder to be a "crime of violence".

It is true, of course, that the list of "crimes of violence" does not include "attempted murder." But each of the crimes identified in the "episode" statute as a "crime of violence" is in turn defined by the statute that lists its elements. No

attempted crime is listed among the crimes of violence. But unlike the identified offenses, attempted murder, and all other attempted crimes, are the product of the attempt statute in concert with the statute defining the elements of the offense. The attempt statute also provides that the class of each attempted crime is the same as the class of the consummated offense. Ind.Code § 35–41–5–1(a) (1998). Murder is unique among these offenses in that it has no statutorily defined "class." The attempt statute addresses this by providing that attempted murder is a Class A felony. It seems to me that the omission of attempted murder is explained by its unusual statutory composition, not by an intent to exclude it if, as is the case here, it is accomplished through a crime that is listed.

Perhaps equally importantly, the majority's construction seems to me to produce results that cannot have been intended and appear to be unconstitutional. It could not have been the legislature's intent not only to treat attempted murder more leniently than other violent crimes, but also to punish a series of severely aggravated attempted murders within a single episode at the presumptive fifty-five year term for murder, which is only slightly more than the maximum for a single severely aggravated but isolated act of attempted murder. Other even more bizarre results flow from the majority's conclusion. Multiple attempted murders stemming from a single episode, if charged as counts of aggravated battery, produce unlimited consecutive sentences because aggravated battery is plainly a "crime of violence." But if charged as the more serious attempted murders, they are capped by the statute.

I am a supporter of and an adherent to the rule of lenity in construing criminal statutes. *Ross v. State,* 729 N.E.2d 113, 116 (Ind.2000). But I would not construe statutes to produce upside-down or absurd results. *Cf. Sales v. State,* 723 N.E.2d 416, 421 (Ind.2000). Indeed, although the contention is not advanced by the parties, the majority's construction seems to me to run afoul of the proportionality requirement of Article I, Section 16 of the Indiana Constitution. *See Conner v. State,* 626 N.E.2d 803, 806 (1993) (a six-year sentence for selling fake marijuana, twice the maximum sentence for selling the same quantity of real marijuana, violated the proportionality requirement). This provision prohibits a penal code that penalizes a less serious crime more severely than a more serious one. Although wide deference should be given to legislative judgment in this arena, it seems inconceivable that attempted murder is less serious than aggravated battery, which under many fact patterns is a lesser included offense of attempted murder with intent to kill the only element differentiating the two. *Wilson v. State,* 697 N.E.2d 466, 475 (Ind.1998); *Leon v. State,* 525 N.E.2d 331, 332 (Ind.1988). Nor can it be less serious than armed robbery where, like attempted murder, in some cases the victim suffers no physical harm.

In short, I agree with the reasoning of the Court of Appeals in *Jackson,* which resolves the issues that I have with the majority's construction of the statute and prevents the upside-down result that I believe flows from the majority's interpretation. For all of the foregoing reasons, I would interpret Indiana Code Section 30–50–1–2 to include attempted murder resulting in severe bodily injury as a "crime of violence." I would therefore affirm the trial court's imposition of a total term of 165 years.

DICKSON, J., concurs.