Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.

ATTORNEY FOR APPELLANT:

**DONALD C. SWANSON, JR.**
Deputy Public Defender
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**J.T. WHITEHEAD**
Deputy Attorney General
Indianapolis, Indiana

**FILED**

May 29 2014, 10:16 am

**CLERK**
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| MARDEL HILL, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 02A03-1309-CR-378 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE ALLEN SUPERIOR COURT
The Honorable John F. Surbeck, Jr., Judge
Cause No. 02D06-1209-FB-152

**May 29, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**CRONE, Judge**

**Case Summary**

The State charged Mardel Hill with class B felony burglary, class B felony attempted arson, class D felony criminal mischief, and class D felony intimidation. Hill was found guilty as charged and was sentenced to an aggregate term of twenty-two years. He appeals, arguing that the evidence is insufficient to support his convictions and that his sentence is inappropriate.[1] Concluding that the evidence is sufficient to support Hill's convictions and that he fails to carry his burden to show that his sentence is inappropriate, we affirm.

**Facts and Procedural History**

The facts most favorable to the convictions follow. Hill and Tiana Washington had been dating on and off for several years. Sometimes, Washington gave Hill a key to her apartment. Tr. at 178, 396. Hill never gave the key back to her, so "whenever [she] needed her key back, [she'd] have to sneak it back while he was asleep or something, or when he wasn't looking." *Id.* at 179-80. On June 15, 2012, Washington gave a key to her apartment to Hill's mother for Hill's use. At some point, she asked Hill to return her key. It was a

---

[1] This is an appeal from cause number 02D06-1209-FB-152 ("Cause 152"). The State also charged Hill in cause number 02D05-1209-FD-1263 ("Cause 1263") with various other crimes. The State filed a motion to join the charges in these causes, which the trial court granted. Indiana Appellate Rule 38 provides,

> When two (2) or more actions have been consolidated for trial or hearing in the trial court or Administrative Agency, they shall remain consolidated on appeal. If any party believes that the appeal should not remain consolidated, that party may file a motion to sever the consolidated appeal within thirty (30) days after the first Notice of Appeal is filed.

Although Causes 152 and 1263 were joined at trial, Hill did not file a consolidated appeal. He separately appealed from each cause. This Court did not notice the error until another panel had issued an opinion in the appeal of Cause 152. In Hill's appeal from Cause 1263, he argued that the trial court erred in granting the State's motion to join the offenses. Another panel of this Court concluded that Hill invited any error based on the allegedly improper joinder and affirmed Hill's convictions. *Hill v. State*, No. 02A03-1309-CR-377, slip op. at 3-4 (Ind. Ct. App. Mar. 27, 2014). Accordingly, we will not address the same joinder issue Hill raises in this appeal because it has already been decided. We address only the issues pertaining solely to Cause 152.

"struggle getting her key back." *Id*. at 179. She had to "sneak [the key] off of his chain to get it back from him." *Id*. at 263.

On June 21, 2012, Washington thought that Hill did not have a key to her apartment. That day, Washington and a friend drove up to her apartment building and saw Hill walking out. Washington got out of the car, and Hill pulled her into her apartment. Washington saw that her apartment door was open even though she had locked her door when she left. She asked Hill how he got in, and he told her not to worry about it. She thought that Hill had the key to her apartment and used it to unlock her door.

On July 12, 2012, Hill and Washington were arguing at her apartment. Hill stripped Washington's bed and hauled her new mattress out of the apartment. He told Washington that "wasn't no other man be sleeping in his bed or he would burn it down for another man lay his head in there." *Id*. at 192. Hill was "very jealous" and had told Washington that "if I can't have you[,] can no one have you." *Id*.

Washington spent the next four nights at her parents' home because she was afraid that Hill would return to her apartment. She reported the mattress theft to the police. She sent Hill a text message, asking him to return her mattress. Over the next three days, she received numerous texts and calls from Hill. She responded to some of his texts, but did not answer his calls. One of Hill's calls to Washington was answered by a friend's boyfriend.

On July 16, 2012, Washington returned to her apartment. When she opened the door, she smelled gas and saw that her apartment had been "trashed." *Id*. at 196. Flour, grease, taco meat, detergent, and bleach had been thrown on the floor, walls, and furniture. The

3

stove was on. Someone had piled pots and pans on it, and they were burned. Some of her clothes had been thrown in the bathtub and bleach poured on them. Other belongings were strewn about. The thermostat was set to approximately 100 degrees Fahrenheit, and the water heater was turned to boiling. The smoke detector had been removed. Washington saw a key to her apartment on the floor. No one that Washington knew other than Hill would have had a reason to do this to her apartment. *Id*. at 375. Some of her possessions were missing, including shoes and important papers such as her birth certificate and social security card. Hill was the only person, other than Washington, who knew where she kept her important documents. *Id*. at 216, 374.

Washington turned off the kitchen appliances and the gas and went to see her neighbor, Jill Maroney. Maroney had been on vacation and had returned the day before. Washington told Maroney what happened and called the police. Maroney went to Washington's apartment and saw trash and debris everywhere. She also saw that a canister of flame retardant over the stove had deployed and that the lamp cover above the stove had melted. The apartment was so hot that Maroney had to leave.

The arson investigator concluded that the fire was not an accident but had been started by a person. *Id*. at 331. In the investigator's opinion, if the flame retardant canister had not deployed, the fire would have spread to the cabinets, through the apartment, and eventually to the entire building. *Id*. at 332.

Washington gave the police her cell phone, which contained text messages between Hill and Washington from July 10 to July 16, 2012. *Id*. at 244-48.; State's Exs. 43-61. One

4

of Hill's texts read, "I gtta go im bout to f\*\*k dis white girl in my nw bed."  State's Ex. 47.

Washington sent Hill a text that told him to stop texting her and that she had a new boyfriend.  Hill sent a text that read, "yu cant never hide…im go beat yo ass, shot his ass den beat yo ass again for thinkin im plyin."  State's Ex. 56.

The State charged Hill in Cause 152 with class B felony burglary, class B felony attempted arson, class D felony criminal mischief, and class D felony intimidation.  The State also charged Hill in Cause 1263 with other crimes.  The State filed a motion to join the offenses in Cause 1263 and Cause 152, which the trial court granted.

During Hill's incarceration prior to trial, he made several phone calls to Washington, which were recorded.  In one of the conversations, Hill told Washington to go tell the prosecutor that she wanted to dismiss the case and then walk out.  Tr. at 416; State's Ex. 65.  He also told her to "forget" his cell phone number and to tell the prosecutor that the phone number that sent the texts to her cell phone was not his.  *Id*. at 371, 414-15; State's Ex. 65.  In a conversation they had just a few days before Washington was scheduled to give a deposition, Washington stated, "I'm afraid my words are going to come out like I lied about everything.  ….  They're going to know I'm lying."  *Id*. at 412; State's Ex. 62.  Hill responded, "[I]t don't matter what they know they got to be able to prove it."  *Id*. at 413; State's Ex. 62.  He also said, "[I]t don't matter if they know you lying or not, if you tell them that's not what happened, then that's not what happened."  *Id*.; State's Ex. 62.  They also talked about what would happen if Washington did not show up to testify and the State issued a warrant.  Washington said, "[A] warrant wouldn't be good."  *Id*. at 416; State's Ex.

5

62. Hill told Washington that she needed to get out of her mother's house and go stay with his mother or grandmother. *Id*. at 417. In another conversation, Washington told Hill that she was mad because she did not have any shoes, and Hill responded, "[D]id I not say you gonna get all that s\*\*t back." *Id*. at 374, 409; State's Ex. 62.

At trial, Washington testified for the State. Hill testified in his defense. In Cause 152, the jury found Hill guilty as charged.

At Hill's sentencing hearing, the trial court stated that the nature of Hill's offenses was among the worst he had seen in twenty-five years on the bench. The trial court also found that Hill's criminal history was an aggravating factor because Hill had failed to respond to multiple efforts at rehabilitation. The trial court found no mitigating circumstances. The trial court sentenced Hill to twenty years for his attempted arson conviction to be served concurrently to a ten-year sentence for burglary and a two-year sentence for criminal mischief. This appeal ensued.

**Discussion and Decision**

**Section 1 – Sufficiency of the Evidence**

Hill challenges the sufficiency of the evidence supporting his convictions for burglary, attempted arson, and criminal mischief. Our standard of review is well settled.

> Upon a challenge to the sufficiency of evidence to support a conviction, we neither reweigh the evidence nor judge the credibility of the witnesses; instead, we respect the exclusive province of the trier of fact to weigh any conflicting evidence. We consider only the probative evidence and reasonable inferences supporting the verdict, and we will affirm if the probative evidence and reasonable inferences drawn from the evidence could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt.

6

*Chappell v. State*, 966 N.E.2d 124, 129 (Ind. Ct. App. 2012) (citations omitted), *trans. denied*.

Specifically, Hill contends that there is insufficient evidence that he was present at Washington's apartment between July 12 and 16, 2012, when the burglary, attempted arson, and criminal mischief were committed.[2] He claims that his case is similar to *McAllister v. State*, 161 Ind. App. 644, 317 N.E.2d 200 (1974), in which another panel of this Court reversed McAllister's arson conviction. There, McAllister and his wife separated. He told her that unless she would take him back he would rather see her dead than see her with somebody else. His sister-in-law heard him threaten to kill his wife and throw her in the White River. About three and a half months after the separation, someone set fire to McAllister's wife's duplex. On that day, at 9:25 p.m., a security officer saw McAllister leaving work. At about 9:30 p.m., McAllister's sister-in-law saw him at a church, where his wife and children were attending services. At 9:45 p.m., the fire department arrived at McAllister's wife's duplex after the residents in the lower half of the duplex had reported hearing strange noises and seeing flames. A little before 10:00 p.m., a security officer saw McAllister return to his job. McAllister's wife's duplex was four minutes from his place of employment. An arson investigator concluded that a forcible entry had been made into the wife's duplex and that three separate fires had been started. The day after the arson occurred,

---

[2] Hill does not challenge any of the other elements necessary to prove burglary, attempted arson, or criminal mischief, and therefore we need not set forth the elements of each crime.

7

McAllister's sister-in-law asked him why he did it, and he said "he didn't, but if he had there wasn't a damn thing she could do about it." *Id*. at 646, 317 N.E.2d at 202.

McAllister was charged with and convicted of arson, which he appealed on the basis of insufficient evidence. The *McAllister* court stated that the evidence supported a reasonable inference that McAllister had opportunity to burn his estranged wife's apartment but that there was no evidence from which a reasonable inference could be drawn that he was in fact the person who set the fire. The court explained,

> The missing link is presence. No evidence indicated that he was present at the scene of the crime. ….
>
> There was no evidence of any kind indicating incendiary activity by McAllister, e.g., possession of flammable materials, burns, scorched clothing, etc. No direct or indirect evidence tended to place him at his wife's duplex. The State only proved he was seen at a church some distance from the scene of the crime at about the time the fire occurred—a suspicious circumstance.

*Id*. at 648, 317 N.E.2d at 203.

*McAllister* is distinguishable from the instant case. Here, in addition to Hill's threats to Washington, the evidence shows that she had given him a key to her apartment that she found on the floor of her apartment after the offenses were committed. The presence of the key at Washington's apartment supports a reasonable inference that he was there between July 12 and 16, 2012. Thus, the evidence shows that Hill had motive, opportunity, and was present at the scene of the crime. Also, Washington's important documents, such as her birth certificate and social security card, had been taken from her apartment. She testified that the only other person who knew where she kept those documents was Hill. Finally, Hill's calls to Washington from jail were recorded. Although he did not outright admit to committing

8

the burglary, he made statements from which a reasonable inference of guilt can be drawn. For example, he essentially told Washington to lie about his cell phone number and seemed to accept that if she changed her story about what happened she would be lying, and when she complained about her missing items, he told her that he was going to get them back. Thus, there are three sources of evidence from which a reasonable inference can be drawn that Hill committed the burglary, attempted arson, and criminal mischief. We conclude that the probative evidence and the reasonable inferences arising therefrom were sufficient for a reasonable trier of fact to find Hill guilty beyond a reasonable doubt. Therefore, we affirm his convictions.

### Section 2 – Inappropriateness of Sentence

Hill contends that the twenty-year sentence imposed for his class B felony attempted arson conviction is inappropriate pursuant to Indiana Appellate Rule 7(B).[3] Our supreme court has stated that "'appellate review should focus on the forest—the aggregate sentence—rather than the trees—consecutive or concurrent, number of counts, or length of the sentence on any individual count.'" *Pierce v. State*, 949 N.E.2d 349, 352 (Ind. 2011) (quoting *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008)). Therefore, in reviewing Hill's sentence, we must consider the aggregate twenty-two-year sentence he received rather than specific sentences for individual convictions.

---

[3] Hill also challenges the appropriateness of the ten-year sentence for his burglary conviction, which he mistakenly states is fifteen years.

9

Indiana Appellate Rule 7(B) states, "The Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Hill has the burden to show that his sentence is inappropriate. *Anglemyer v. State*, 868 N.E.2d 482, 494 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218.

Concerning the nature of the offense, the advisory sentence is the starting point the Legislature selected as appropriate for the crime committed. *Id.* Hill was convicted of two class B felonies and two class D felonies and received a twenty-two-year sentence. For class B felonies, the advisory sentence is ten years, with a minimum term of six years and a maximum term of twenty years. Ind. Code § 35-50-2-5. For class D felonies, the advisory sentence is one and a half years, with a minimum term of six months and a maximum term of three years. Ind. Code § 35-50-2-7.

Hill received *concurrent* terms of ten years for his burglary conviction, twenty years for his attempted arson conviction, and two years for his criminal mischief conviction. We observe that Indiana Code Section 35-50-1-2 limits the authority of the trial court to order consecutive sentences where the crimes arose out of a single episode of criminal conduct, but that limitation does not apply "between a crime of violence and those that are not crimes of violence." *See Ellis v. State*, 736 N.E.2d 731, 737 (Ind. 2000). In this case, Hill's burglary and attempted arson arose out of a single episode of criminal conduct, but the consecutive sentence limitation does not apply between them because class B felony burglary is a crime of violence. Ind. Code § 35-50-1-2. Thus, the trial court could have imposed consecutive

sentences for class B felony burglary and attempted arson, and Hill faced a maximum sentence of forty years for these two crimes. He also could have received up to three years for the class D felony intimidation. With this in mind we turn to the nature of Hill's crimes.

The trial court stated that the nature of Hill's crimes was among the worst that he had seen in twenty-five years on the bench. Hill's actions in Washington's apartment were indeed destructive. Hill threw flour, grease, taco meat, detergent, and bleach throughout Washington's apartment. Clothes and furniture were ruined. Hill's attempt to set fire to Washington's apartment damaged the stove and her pots and pans. Washington suffered thousands of dollars of damage to her property and to her apartment. Tr. at 250. In addition, although Washington was not present in her apartment when Hill attempted to set it on fire, the fire could have spread to other apartments and endangered the lives of other residents.

As for Hill's character, he has six juvenile adjudications. Although not serious in nature, his failure to respond to multiple opportunities for rehabilitation shows his disrespect for the law. As an adult, Hill was convicted of failure to register a firearm in federal court. He was on supervised release when he committed the instant offenses, and a petition to revoke supervision has been filed. Hill's treatment of Washington is also a poor reflection of his character. In their phone conversations and in his text messages he was consistently abusive to and disrespectful of Washington. His words and actions show a complete disregard for her wellbeing. Based on the nature of his crimes and his character, Hill has failed to carry his burden to show that his aggregate twenty-two year sentence is inappropriate. Accordingly, we affirm his sentence.

11

Affirmed.

BAKER, J. and NAJAM, J., concur.