## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 22 2015, 9:11 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Adam G. Forrest
Boston Bever Klinge Cross & Chidester
Richmond, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Karl M. Scharnberg
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Robert Campbell,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

December 22, 2015

Court of Appeals Cause No.
89A04-1503-CR-98

Appeal from the Wayne Superior Court

The Honorable Charles K. Todd, Jr., Judge

Trial Court Cause No.
89D01-1203-MR-5

**Barnes, Judge.**

# Case Summary

Robert Campbell appeals his ninety-eight-year sentence for murder, Class A felony conspiracy to commit robbery, and Class B felony conspiracy to commit robbery. We affirm.

# Issue

The issue before us is whether Campbell's aggregate sentence of ninety-eight years is inappropriate in light of his character and the nature of the offenses.

# Facts

Campbell was friends with the victim Mike Sekse. They had known each other for three to four months prior to Seske's murder. Campbell supplied Sekse with large quantities of marijuana, and Sekse was a dealer. The two conducted transactions at least three times prior to the day of the incident. On March 20, 2012, Campbell, along with John Gray, Montell Westfall, David Lady, Jr., and Matt Allen, concocted a plan to inform Sekse that Campbell had fifteen pounds of marijuana worth approximately $11,250 to sell. Campbell, who was eighteen years old, did not in fact have any marijuana to sell, but he wanted Sekse to come to Gray's residence with the money to make the purchase.

Campbell spearheaded the plan to surprise Sekse and take the money Seske brought. After Sekse's arrival, Westfall and Allen were to go to the shed in the backyard to pretend to remove a piece of plywood off the wall where the marijuana was supposedly hidden. The group took this step to ensure Sekse did not get suspicious. Meanwhile, Sekse and Campbell were to go back to Sekse's

truck and count the money. When Sekse and Campbell came back to get the marijuana from the shed, Gray and Lady intended to "jump" Sekse. Tr. p. 266. Campbell placed his gun in the shed on Gray's property.

[5] Upon Sekse's arrival to Gray's home, Sekse and Campbell met in Sekse's truck to count the money. Campbell told Westfall and Allen to go into the shed and get the marijuana. After the money was counted, Campbell and Sekse walked out to the shed. Lady and Gray followed Campbell and Sekse into the shed. Lady immediately began stabbing Sekse in the neck. Sekse turned around, and Gray stabbed him in the back. He was stabbed a total of fourteen times. Sekse tried to defend himself, but at that point Campbell shot him in the head. Sekse was still breathing after being shot. Gray then grabbed Sekse by the hair and stabbed him in the neck a few more times because he was still breathing. Sekse then died.

[6] After the incident, Campbell distributed $1,000 to each of his four co-conspirators kept the rest for himself. Campbell gave his gun to Allen and requested that Allen get rid of it. Campbell stated, "I don't want to spend the rest of my life in prison." *Id.* at 237. Gray stated that he would move the body and also promised to move Sekse's truck. The day after the murder, Sekse's brother, Mark, questioned Campbell about where his brother was.

[7] Campbell fled to Toledo, Ohio, and later Richmond, Kentucky. He spent his money on a gun, food, drugs, and accommodations. On April 17, 2012, Campbell was arrested. On January 30, 2015, Campbell pled guilty to murder,

Class A felony conspiracy to commit robbery, and Class B felony conspiracy to commit robbery. The trial court imposed a sentence of sixty years for murder, thirty-eight years for Class A felony conspiracy to commit robbery, and fourteen years for Class B felony conspiracy to commit robbery. The sentences for murder and Class A felony conspiracy are to be served consecutively while the sentence for Class B felony conspiracy is to be served concurrent with the other two sentences, resulting in an aggregate term of ninety-eight years. Campbell now appeals.

## Analysis

Campbell asserts that his ninety-eight-year sentence is inappropriate under Indiana Appellate Rule 7(B) in light of his character and the nature of the offenses. Although Rule 7(B) does not require us to be "extremely" deferential to a trial court's sentencing decision, we still must give due consideration to that decision. *Rutherford v. State*, 866 N.E.2d 867, 873 (Ind. Ct. App. 2007). We also understand and recognize the unique perspective a trial court brings to its sentencing decisions. *Id.* "Additionally, a defendant bears the burden of persuading the appellate court that his or her sentence is inappropriate." *Id.*

The principal role of Rule 7(B) review "should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). We "should focus on the forest—the aggregate sentence—rather than

the trees—consecutive or concurrent, number of counts, or length of the sentence on any individual count." *Id.* Whether a sentence is inappropriate ultimately turns on the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case. *Id.* at 1224. When reviewing the appropriateness of a sentence under Rule 7(B), we may consider all aspects of the penal consequences imposed by the trial court in sentencing the defendant, including whether a portion of the sentence was suspended. *Davidson v. State*, 926 N.E.2d 1023, 1025 (Ind. 2010).

[10] Regarding Campbell's character, we do acknowledge that he pled guilty, which generally is a positive reflection upon character. *See Cotto v. State*, 829 N.E.2d 520, 525-26 (Ind. 2005). Campbell also expressed remorse at the sentencing hearing, which he contends warrants a reduced sentence. However, the trial court specifically stated on the record that after observing Campbell and considering all the other evidence, it was "convinced the Defendant has considerable remorse regarding the position he finds himself in and being locked up, [but] the Court is less convinced . . . the Defendant has any significant remorse for his actions and the impact on the victim's family." Tr. p. 149. A trial court is in the best position to gauge the sincerity of a defendant's remorse, similar to other determinations of credibility. *See Pickens v. State*, 767 N.E.2d 530, 535 (Ind. 2002).

[11] Campbell further asserts that his relatively young age at the time of the offenses—eighteen—should factor into a reduction of his sentence. We

disagree. "Focusing on chronological age is a common shorthand for measuring culpability, but for people in their teens and early twenties it is frequently not the end of the inquiry. There are both relatively old offenders who seem clueless and relatively young ones who appear hardened and purposeful." *Ellis v. State*, 736 N.E.2d 731, 736 (Ind. 2000). Campbell falls into the "hardened and purposeful" category. He was the ringleader of the conspiracy to rob and kill Sekse and painstakingly cover up the crime. Moreover, as noted by the trial court at the sentencing hearing, Campbell had been dealing marijuana for three years before Sekse's murder and robbery, often in large quantities. This was not a situation in which a youthful, naïve defendant was led into criminal behavior by an older individual. We give no special consideration to Campbell's age at the time of the offenses.

[12] Counterbalancing any positive evidence of Campbell's character as revealed by his guilty plea is his history of criminal activity, as shown by prior juvenile adjudications and uncharged conduct. Campbell attempts to minimize his juvenile record, noting that his first contact with the juvenile justice system at age nine was for battering a fellow student by pinching and that one of his true findings was for criminal mischief. In addition to those two incidents, however, Campbell also was found delinquent on separate occasions for battery and possession of marijuana. Campbell also was arrested on multiple occasions for various other offenses as a juvenile. Campbell was engaged in a substantial marijuana-dealing operation for approximately three years before these offenses. Even if Campbell's prior criminal history was relatively minor, he was

hardly living a law-abiding life for several years before he orchestrated Sekse's robbery and murder—quite the opposite. *See Edrington v. State*, 909 N.E.2d 1093, 1100 (Ind. Ct. App. 2009) (noting that lack of prior convictions does not necessarily indicate defendant had led a law-abiding life where evidence indicates he or she regularly engaged in uncharged criminal conduct), *trans. denied*. Finally, we note that Campbell accumulated approximately seventy conduct violations while in jail awaiting the outcome of his case. This also reflects poorly upon his character and ability to conform his behavior to legal requirements. *See Field v. State*, 843 N.E.2d 1008, 1012 (Ind. Ct. App. 2006), *trans. denied*. In sum, there is considerable evidence of Campbell's negative character, significantly outweighing the positive effect of his guilty plea.[1]

[13]   As for the nature of the offenses, Campbell devised the plan to rob and murder Sekse, using the cover of his substantial long-term marijuana dealing operation to lure Sekse into a trap. Campbell then took steps to cover up the crime and fled the state, using the money he had stolen from Sekse to support himself and to buy more drugs. As found by the trial court, it is clear from the record that Campbell was the most culpable of all the perpetrators of the robbery and murder. That level of culpability is reflected in the sentence Campbell received as compared to his cohorts: Gray received a sentence of ninety years, while the others received sentences of forty to fifty years. The only apparent motive for

---

[1] On appeal, Campbell does not refer to certain factors related to his character that he raised before the trial court, such as alleged mental health issues and a difficult childhood.

the murder was pure greed. Nothing about the nature of the offenses warrants a reduction of Campbell's sentence.

## Conclusion

Campbell's ninety-eight-year sentence is not inappropriate. We affirm.

Affirmed.

Kirsch, J., and Najam, J., concur.