John D. FARRIS, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 02S00–0006–CR–386.

Supreme Court of Indiana.

Aug. 28, 2001.

Mark Olivero, Fort Wayne, IN, Attorney for Appellant.

Karen M. Freeman–Wilson, Attorney General of Indiana, Eileen Euzen, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

BOEHM, Justice.

John Farris was convicted of aiding the murder of Nicole Barrone and aiding the aggravated batteries of Ronald Foreman, Janice Foreman, and Brenda Washington. He was sentenced to an aggregate term of 155 years. On direct appeal, Farris presents six issues for review, which we restate as five: (1) whether the prosecution of Farris following a mistrial violated the prohibition against double jeopardy; (2) whether the trial court erred in permitting the introduction of a prior deposition; (3) whether the trial court erred in denying Farris' motion for a directed verdict and whether the convictions were based on sufficient evidence; (4) whether the trial court erred in finding that aiding murder and aiding aggravated battery are "crimes of violence" and therefore subject to consecutive sentencing; and (5) whether the trial court's sentencing order constituted cruel and unusual punishment. We affirm the trial court.

## Factual and Procedural Background

In June 1997, John Farris and Richie Foreman were arrested and charged with the robbery of Tom's Super Value Store in Fort Wayne. Farris was released on bond and Richie cooperated with police and planned to testify against Farris in a trial set for late January 1998.[1]

Dorothy Foreman was Farris' girlfriend and Richie's sister. On January 16, 1998, Brenda Washington, Richie's ex-wife, and Dorothy were at a bingo parlor when Farris arrived with his nephew, Sonny Woods, and ordered Dorothy at gunpoint to accompany him to Farris' apartment. Later that night, Danny Littlepage arrived at the apartment. Farris told Littlepage that he wanted him to go to the Foreman family home, where Richie lived, and "take care of" Richie and Washington because of the problems they had caused Farris. Farris handed Littlepage a handgun and threatened to shoot Littlepage if he did not complete this assignment. Littlepage and Woods then drove to Foreman's house and parked in an alley approximately one block away.

Around midnight, nine people were in Foreman's living room: Washington and her three children, Washington's niece Nicole Barrone, Richie's brother Ronald, Richie's mother Janice, and Dorothy's two children. Richie was not home. Littlepage, cloaked in a blue bandana but still identifiable to the victims, burst through the door and ordered everyone to the floor. Littlepage then fired four shots, hitting Ronald in the neck, Washington in the neck, Barrone in the stomach, and Janice in the face. Ronald, Washington, and Janice survived, but after three painful operations, Barrone died.

Littlepage and Woods returned to Farris' apartment and Littlepage gave the gun to Woods to return to Farris. The next day, Farris told Dorothy that her mother, Janice, had been shot, but refused to allow her to leave his apartment to check on her mother or her children.

### A. The Investigation and Arrest

After Farris learned that he was a suspect in the shootings, he called the detective investigating the case to deny his involvement in the incident and to deny forcing Dorothy to come with him on the

---

1. At some point, Richie pleaded guilty to aiding robbery. The date of that plea agreement is not in the record.

night of the shootings. Farris also said that he had "a cap" for Richie. A week later, Farris again called the police station, this time to criticize the detective for releasing Littlepage from custody. Farris also said that Littlepage's days were "numbered." After the detective warned Farris that if anything happened to Littlepage, he would be the prime suspect, Farris laughed and said that he was not returning to Fort Wayne. He added that he had friends and family who would take care of Littlepage for him.

On March 19, 1998, Farris was pulled over in a traffic stop north of South Bend. A license check revealed a warrant for his arrest. When he was ordered out of the car, Farris drove off and led police on a high speed car chase into South Bend. Ultimately, Farris crashed his car, attempted to escape on foot, and was apprehended. After his arrest, Farris gave a videotaped statement to police in which he admitted giving the gun to Littlepage on the night of the shootings but claimed that Littlepage asked for the weapon and that he did not know what Littlepage planned to do with it.

### B. *Farris' First Trial*

The information charged Farris with one count of "aiding murder," three counts of "aiding aggravated battery," and being a habitual offender.[2] On the second day of Farris' trial, the State called Littlepage to the stand. The following exchange then occurred in the presence of the jury:

The Court: Would you raise your right hand for me, sir? Do you solemnly swear the testimony you shall give shall be the truth, the whole truth and nothing but the truth, so help you God?

Littlepage: I don't feel like testifying. I had already told the prosecutor.

The Court: All I'm asking you, sir, is whether or not, if you do testify, you're going to testify truthfully.

Littlepage: No.

The trial court then dismissed the jury and convened a bench hearing to determine if Littlepage would testify.

During the hearing, Littlepage said that he understood that he was under subpoena and that his plea agreement required him to testify truthfully against Farris, but he nonetheless was invoking his Fifth Amendment right because he was afraid of being killed in prison for being a snitch.[3] Farris moved for a mistrial, arguing that the prosecutors knew that Littlepage would not testify and still called him to the stand. Farris argued that Littlepage's declaration in front of the jury that he would not testify placed Farris in "grave peril" and was therefore reversible error. The prosecutor responded that he did not expect Littlepage to refuse to testify. The prosecutor said he had met with Littlepage several times before trial to review his testimony and only on the morning of trial had Littlepage indicated that he would not im-

---

2. Throughout Farris' trials, the counts against him were referred to as "aiding murder" and "aiding aggravated battery." The information makes clear that Farris was actually charged with violations of both Indiana Code sections 35–42–1–1 and 35–41–2–4 on count one, and Indiana Code sections 35–42–2–1.5 and 35–41–2–4 on counts two, three and four. In other words, he was charged with one count of murder and three counts of aggravated battery based on accomplice liability.

3. Prosecutor: So if I ask you any questions, what are you going to say?
Littlepage: Plead the Fifth.
Prosecutor: Plead the Fifth? You're already pled guilty in this case.
Littlepage: I know. I pled guilty to this case, but still, I stand on, you know, not testifying.

plicate Farris in the shooting. The prosecutor stated that he had believed that Littlepage would testify to the facts of the incident but would not say that Farris had threatened him or that the threat had caused him to commit these crimes.

The trial court found that the prosecutor did not know that Littlepage would invoke the Fifth Amendment. Nevertheless, the trial court ruled that his doing so in front of the jury required a mistrial. Farris' second trial was scheduled to begin the next week. At no time did Farris object that the second trial would be barred by double jeopardy.

## C. *Farris' Second Trial*

The day before the second trial, the trial court held a hearing to determine whether Littlepage would testify. When Littlepage again claimed a Fifth Amendment right, the trial court ordered him to testify, he refused, and the trial court found him in contempt. At this hearing, Farris asked Littlepage if his pretrial statements to police were true and Littlepage disclaimed all statements that he had given regarding the case. The prosecutor then asked the trial court to declare that Littlepage was an unavailable witness and asked to offer Littlepage's sworn deposition testimony into evidence pursuant to Indiana Rule of Evidence 804(a)(2). Farris objected on the ground that he was not personally present at the deposition, even though his counsel was present. The trial court found that Farris was given the opportunity to examine Littlepage at the deposition and that Littlepage was an "unavailable" witness. The court then ruled that Littlepage's deposition and any prior inconsistent statements would be admitted at the trial.

On the second day of Farris' second trial, in the presence of the jury, the State called Littlepage as a witness, asked that he be declared unavailable, and asked permission to enter Littlepage's deposition into evidence pursuant to Indiana Rule of Evidence 804(a)(2). Farris renewed his objection based on his lack of ability to confront Littlepage at the deposition. The trial court overruled Farris' objection and allowed the State to read Littlepage's deposition into evidence.

The jury convicted Farris of aiding murder and three counts of aiding aggravated battery. The jury also found that Farris was a habitual offender. The trial court sentenced Farris to sixty-five years for aiding murder, enhanced by thirty years for being a habitual offender, and three twenty-year sentences for each of the aiding aggravated battery convictions. Although each of the crimes took place in a single criminal episode, the trial court found that the crimes of aiding murder and aiding aggravated battery are "crimes of violence" under Indiana Code section 35–50–1–2, and could be imposed consecutively. An aggregate sentence of 155 years imprisonment resulted.

## I. Double Jeopardy

Farris alleges that the prosecutor knew that Littlepage would invoke his Fifth Amendment right against self-incrimination if called to the stand but nevertheless called Littlepage to expose the jury to the claim of privilege. From this factual premise, Farris contends that his second trial violated the double jeopardy provision of the United States Constitution.

 The Fifth Amendment provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V. Although a defendant's motion for a mistrial constitutes "a deliberate election on his part to forgo his valued right to have his guilt or innocence determined before the first trier of fact," *United States v. Scott,* 437 U.S. 82, 93, 98 S.Ct. 2187, 57 L.Ed.2d

65 (1978), the United States Supreme Court has provided a narrow exception that bars a second trial after a mistrial "where the governmental conduct in question is intended to 'goad' the defendant into moving for a mistrial." *Oregon v. Kennedy*, 456 U.S. 667, 676, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982). The subjective intent of the prosecutor is the dispositive issue. *Wilson v. State*, 697 N.E.2d 466, 472 (Ind.1998). Although a trial court's determination of prosecutorial intent is not conclusive for purposes of appellate review, its determination is "very persuasive." *Id.* at 473. "It is a factual determination that we review under a clearly erroneous standard." *Butler v. State*, 724 N.E.2d 600, 604 (Ind.2000).

■ When Littlepage refused to testify, the prosecutor maintained that Littlepage had given him no forewarning and, in several interviews, had been forthcoming with details of the crimes and Farris' involvement. Littlepage confirmed that he had repeatedly told prosecutors that he would testify. The prosecutor further stated that on the morning of the trial, after Littlepage had indicated that he would not implicate Farris in the shootings, it was still necessary to call Littlepage to the stand to establish the narrative of the crimes and the fact that Littlepage had pleaded guilty. The trial court found that the prosecutor did not know that Littlepage planned to plead the Fifth Amendment, and therefore did not intentionally produce a mistrial. Farris offers nothing but speculation to challenge this view. He does not demonstrate that the trial court's finding was clearly erroneous. Because Farris' legal theory depends on this factual premise, his contention fails.

## II. Testimony from Deposition

■ Farris argues that the trial court erred in admitting Littlepage's deposition into evidence because: (1) the State did not lay a proper foundation to declare Littlepage unavailable; (2) the introduction of Littlepage's deposition violated his confrontation rights; and (3) the deposition was not admissible under Indiana Rule of Evidence 804(b)(3). At trial, Farris objected to admission of the deposition only on the basis that it violated his right to confront witnesses. He raises improper foundation and Rule 804(b)(3) for the first time in this appeal. "It is well settled that a party may not raise one ground before the trial court and a different ground on appeal." *Wurster v. State*, 715 N.E.2d 341, 347–48 (Ind.1999). "The changing of theories is substantially indistinguishable from having never raised the issue in the first instance." 4A Kenneth M. Stroud, *Indiana Practice* § 3.2 (2d ed.1990). Farris has waived review of his claims of erroneous admission based on improper foundation and Rule 804(b)(3).

■ Farris correctly points out that, although criminal defendants generally have no constitutional right to attend depositions, *Jones v. State*, 445 N.E.2d 98, 99 (Ind.1983), depositions taken in the absence of defendants may not be admissible if the deponent is later unavailable for trial, *Miller v. State*, 517 N.E.2d 64, 71–73 (Ind.1987). However, where defense counsel takes the deposition of a witness and actively participates in it, the defendant has waived his right of confrontation at trial. *State v. Owings*, 622 N.E.2d 948, 952 (Ind.1993); *Ingram v. State*, 547 N.E.2d 823, 826 (Ind.1989). That doctrine applies here because, although Farris was not present at Littlepage's deposition, the proceeding was conducted by Farris' attorney. The trial court correctly overruled Farris' objection that admission of the deposition violated his Sixth Amendment right to confrontation.

## III. Motion for Directed Verdict and Sufficiency of Evidence

Farris argues that the trial court erred when it denied Farris' motion for a directed verdict. When a defendant moves for judgment on the evidence, the court is required to withdraw the issues from the jury if: (1) the record is devoid of evidence on one or more elements of the offense; or (2) the evidence presented is without conflict and subject to only one inference, which is favorable to the defendant. Ind. Trial Rule 50(A); *Cutter v. State,* 725 N.E.2d 401, 407 (Ind.2000). Farris contends that there was no substantive evidence to support the findings by the jury that Farris, by his threat, caused Littlepage to commit the shootings or that Farris supplied Littlepage with the handgun used in the crime.

■ After the trial court denied Farris' motion for a directed verdict, Farris introduced two defense exhibits into evidence and read a portion of Littlepage's testimony from the January 31, 2000, hearing in which Littlepage stated that he was revoking all prior statements implicating Farris. Farris then rested his case. Because the defendant presented evidence on his own behalf following the trial court's denial of his motion for judgment on the evidence at the close of the State's case-in-chief, we will not review that ruling but rather will treat the issue as one of general insufficiency of the evidence. *Chubb v. State,* 640 N.E.2d 44, 47 (Ind.1994); *Kuchel v. State,* 570 N.E.2d 910, 915 (Ind.1991). Our standard of review for sufficiency claims is well settled. We will not reweigh the evidence or assess the credibility of witnesses. Rather, we look to the evidence and reasonable inferences drawn therefrom that support the verdict and will affirm the conviction if there is probative evidence from which a reasonable jury could have found the defendant guilty beyond a reasonable doubt. *Taylor v. State,* 681 N.E.2d 1105, 1110 (Ind.1997).

■ Littlepage testified in his deposition that Farris gave him the gun and instructed Littlepage to shoot the adults at the Foreman house. Additionally, Littlepage testified in his deposition that Farris told him that if Littlepage did not carry out this task, Farris would shoot Littlepage. Other evidence is consistent with Littlepage's claim that Farris supplied the gun used in the shooting. Farris' videotaped statement to the investigating detective was admitted into evidence. On that tape, Farris admitted that he gave a handgun to Littlepage just before the shootings occurred, but denied that he knew what Littlepage planned to do with the gun. A firearms examiner with the Indiana State Police testified that the bullet casings found at the scene were consistent with the ammunition that would be fired from the handgun.

Farris points out that both Woods and Dorothy gave testimony at trial that conflicted with their earlier statements to investigating officers. Additionally, Farris points to Littlepage's testimony at the January 31 hearing that attempted to "revoke" all statements that he had previously given in the case. These inconsistencies in testimony were before the jury. The credibility of these witnesses was for the jury to determine. There was sufficient evidence to support Farris' convictions.

## IV. "Crimes of Violence"

■ Farris argues that the trial court erred when it imposed the maximum sentence on each of the four counts and ordered that they be served consecutively. Indiana Code section 35–50–1–2 limits a trial court's ability to impose consecutive sentences for multiple crimes which arise out of a single "episode of criminal conduct." This limitation does not apply to a

defined list of "crimes of violence." Farris notes that, although murder and aggravated battery are expressly defined as "crimes of violence," aiding murder and aiding aggravated battery are not. Because he was charged with murder and aggravated battery as an accomplice, Farris argues that the trial court improperly imposed consecutive sentences.

 The legislature defined by name and citation the crimes that are "crime[s] of violence" for the purposes of Indiana Code section 35–50–1–2. *Ellis v. State*, 736 N.E.2d 731, 737 (Ind.2000). This Court recently held that, because attempted murder is not among those listed in the statute, it is not a "crime of violence." *Id.* at 736–38. That reasoning does not apply to murder committed by an accomplice. The crime of attempted murder receives singular treatment in the Indiana Code. An attempted crime, unlike aiding the crime, is the product of the attempt statute in concert with the statute defining the elements of the offense. *Id.* at 741 (citing Ind.Code § 35–41–5–1(a) (1998)). In contrast, Indiana Code section 35–41–2–4 provides that "[a] person who knowingly or intentionally aids, induces, or causes another person to commit an offense commits that offense." There is no distinction between the accessory and the perpetrator of the crime. Rather, both commit the offense, and a person who aids another person to commit a crime is as guilty of the principal offense as the actual perpetrator. *Sanquenetti v. State*, 727 N.E.2d 437, 439 (Ind.2000).

Murder and aggravated battery are clearly "crimes of violence" and subject to consecutive sentencing. The statute does not treat those crimes differently if a conviction is based on a theory of accomplice liability. The trial court did not err in ordering Farris to serve consecutive sentences.

## V. Cruel and Unusual Punishment

 Farris asserts that his aggregate sentence of 155 years constitutes cruel and unusual punishment in violation of the Eighth Amendment of the United States Constitution and Article I, Section 16 of the Indiana Constitution. Farris also claims that his sentence was disproportionate because there was a single episode of criminal conduct, Farris was convicted under the accomplice liability statute, and, pursuant to a plea agreement, the triggerman received a sentence of only fifty-five years. The Indiana Constitution requires that a sentence be proportionate to the nature of the offense. The constitutional requirement that a sentence be proportionate to the offense does not require us to compare, as Farris would have us do, his sentence to the sentence of others convicted of the same crime. *Gambill v. State*, 675 N.E.2d 668, 678 (Ind.1996). Farris provided Littlepage with a gun and instructed him to "take care of" two people, one of whom angered Farris by cooperating with the State in a separate criminal proceeding against Farris. At Farris' behest, Littlepage opened fire on a group of people, including five children. Three victims were seriously wounded and one person died. Farris' sentence is not disproportionate to the nature of his offense.

Farris presents no case authority or argument to support his simple assertion that his sentence violates the constitutional prohibition against cruel and unusual punishment found in the Eighth Amendment and Article I, Section 16. Accordingly, Farris has waived review of this issue. Former Ind. Appellate Rule 8.3(A)(7) (now App. R. 46(A)(8)); *Dunlop v. State*, 724 N.E.2d 592, 596 n. 6 (Ind.2000) (failure to cite to authority supporting constitutional claim forfeits the claim on appeal).

## Conclusion

The judgment of the trial court is affirmed.

SHEPARD, C.J., and DICKSON, SULLIVAN, and RUCKER, JJ., concur.