## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 30 2017, 9:28 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

David L. Whitsett II
Frankfort, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Monika Prekopa Talbot
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Randal Shawn Dunham,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | May 30, 2017<br><br>Court of Appeals Case No.<br>12A02-1606-CR-1357<br><br>Appeal from the Clinton Circuit Court<br><br>The Honorable Bradley K. Mohler, Judge<br><br>Trial Court Cause No.<br>12C01-1503-F1-289 |

**Mathias, Judge.**

[1]     Randal Shawn Dunham ("Dunham") was convicted of Level 4 felony child molesting after a jury trial in Clinton Circuit Court. Dunham was sentenced to

seven years in the Department of Correction, three years executed and four suspended to probation. Dunham appealed, claiming his trial counsel was ineffective and the sentencing court abused its discretion.

We affirm.

## Facts and Procedural Posture

Dunham lived in Frankfort, Indiana, with his girlfriend Renee Knox ("Knox"). J.B. is Knox's daughter from a previous relationship, nine years old at the time of trial. J.B. would stay with Dunham and Knox on the weekends and some holidays; during the week she stayed with her father and his girlfriend. This arrangement was voluntary, not court-ordered, and was not the source of any conflict between the families. J.B. stayed with Dunham and Knox over the long Thanksgiving weekend in 2014, from Wednesday evening to Sunday evening.

The following Monday, J.B. complained to her grandmother, her father's mother, that her "privacy" hurt. Tr. Vol. I, p. 105. This was the word her grandmother had taught her for "vagina." *Id.* J.B.'s complaint was not unusual, as she sometimes suffered irritation there which both families ascribed to hygiene problems they were working to correct. Accordingly, her father had developed a list of questions he would ask J.B. when she complained about her "privacy" hurting. Among them, her father would ask, "Has anybody possibly touched you there?" *Id.* at 81. The answer to this question had always been "No," but on that day J.B. answered "Well—" and began to cry. *Id.* at 82. Her father blanched and called his girlfriend into the room.

[5] Before her father and his girlfriend, J.B. said that Dunham had lain down beside her as she was sleeping on the couch in the living room of Dunham's and Knox's house. Dunham started to touch her vagina beneath her clothes. J.B. tried to get off the couch, but Dunham pulled her back. J.B. was eventually able to get off the couch. She went to her room and fell asleep.

[6] Hearing J.B.'s story, her father went to his mother's house to ask for advice. Before leaving, he told his girlfriend to record J.B.'s story using her cell phone. That recording was made but never admitted at trial. J.B.'s grandmother told her son to call the police, which he did. J.B., her father, and his girlfriend all went together to the Frankfort Police Department and filed a report. Soon after, J.B. gave an interview to an investigator from the Department of Child Services, which corroborated the recording made by her father's girlfriend. A Frankfort police detective interviewed the adult actors in the case, including Dunham, who maintained his innocence.

[7] On March 26, 2015, the State charged Dunham by information in Clinton Circuit Court with Level 1 felony child molesting and Level 4 felony child molesting. The court granted the State's motion to dismiss the Level 1 felony charge on October 13, 2015. Dunham was tried before a Clinton County jury over two days, from April 26, 2015, to April 27, 2015. J.B. was the State's first witness. Though she could not remember much, she reaffirmed that Dunham had touched her vagina on the couch. At the close of the State's case in chief, Dunham moved for judgment on the evidence, which the court denied.

[8] Dunham then presented a thorough alibi defense, calling a series of friends and relatives to testify to his activities over the Thanksgiving holiday. J.B. had slept at Knox's ex-sister-in-law's house on Thursday night so Dunham and Knox could go Christmas shopping. Dunham had spent most of the long weekend celebrating with family or working with friends. Specifically, Dunham kept a workshop in a detached garage at his and Knox's house where he would work with his friends on mechanical projects very late into the night. Knox testified that J.B. always slept in her bedroom, never on the couch in the living room, and was in bed by the time Dunham came in from the garage. Dunham had also spent a day driving around the state with friends picking up parts and material for future projects. Nevertheless, as the State argued in closing, the jury

> heard . . . testimony not just from the State, but from the defense as well . . . that there [were] periods of time when [J.B. was] out of sight of other people; when [Dunham was] out of sight of other people; when he [came] into the home in the early morning hours on several occasions and [Knox was] asleep. . . . There was ample time over that period of . . . five days that [Dunham] had access to [J.B.].

*Id.* at 244.

[9] The jury found Dunham guilty as charged. On May 23, 2016, Dunham was sentenced to seven years in the Department of Correction, three years executed and four suspended to probation. Dunham was also required to register as a "sexually violent predator." Ind. Code § 35-38-1-7.5(a). In aggravation, the court weighed Dunham's "very slight" criminal history, J.B. being younger

than twelve at the time of the molestation, and Dunham's position of trust over J.B. Appellant's App. pp. 53-54. In mitigation, the court weighed Dunham's obligation to support his minor children from earlier relationships. The court "also consider[ed]" that Dunham's presentence investigation report rated him a "very high" risk to re-offend, *id.* at 54, but in the context of Dunham's argument that the presentence investigator improperly rested this conclusion entirely on Dunham's failure to "take responsibility" — that is, on his profession of innocence — and on the high incidence of drug crimes in Dunham's neighborhood, a fact irrelevant to Dunham's case. Tr. Vol. II, p. 27.

[10] Dunham now appeals, claiming that his trial counsel was constitutionally ineffective for failing to move for judgment on the evidence a second time after the defense rested, and that the sentencing court abused its discretion by weighing Dunham's profession of innocence in aggravation of his sentence.

## Discussion and Decision

### I. Ineffective Assistance of Counsel

[11] The Sixth Amendment to the federal constitution protects the right of an accused to receive the effective assistance of counsel for his defense. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). A convicted defendant who received ineffective assistance is entitled to a remedy that will "neutralize the taint of [the] constitutional violation . . . ." *Lafler v. Cooper*, 566 U.S. 156, 170 (2012). To show ineffective assistance, the defendant must show that counsel's performance fell below an objective standard of professional reasonableness

("the performance prong"), and a reasonable probability the outcome would have been different but for counsel's objectively unprofessional errors ("the prejudice prong"). *French v. State*, 778 N.E.2d 816, 824 (Ind. 2002). Failure to satisfy either prong causes the whole claim to fail. *Id.* "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010).

[12] Dunham did not surmount it here. Dunham claims his trial counsel was ineffective by failing to move for judgment on the evidence a second time after the defense rested. Dunham argues that, because the trial court could have weighed his alibi evidence against the State's evidence, while we could not have done so on direct review of the sufficiency of the evidence, there was a reasonable probability that the outcome would have been different had Dunham's trial counsel invited the trial court to weigh the evidence before submitting it to the jury.

[13] This argument fails. As to the performance prong, Dunham has not approached even the most basic showing required to establish that failure to file a second motion fell below an objective standard of professional reasonableness. He alleges in conclusory fashion that the "prevailing norm" is to move for judgment on the evidence after the close of all the evidence, Appellant's Br. at 11, *see Premo v. Moore*, 562 U.S. 115, 122 (2011) ("The question is whether an attorney's representation amounted to incompetence under prevailing professional norms . . . ."), but points to no record evidence establishing such a norm.

[14] As to the prejudice prong, Dunham's argument rests on a misconception of the standard applied by trial courts on motions for judgment on the evidence. Contrary to Dunham's argument, the trial court could *not* have weighed Dunham's alibi evidence against the State's evidence. On a motion for judgment on the evidence, "[a] trial court may not invade the province of the jury by weighing the evidence presented or the credibility of witnesses." *Garcia v. State*, 979 N.E.2d 156, 158 (Ind. Ct. App. 2012) (citing *State v. Taylor*, 863 N.E.2d 917, 919 (Ind. Ct. App. 2007)). The motion should be granted only if "the record is devoid of evidence on one or more elements of the offense[,] or . . . the evidence presented is without conflict and subject to only one inference, which is favorable to the defendant." *Id.* at 157.

[15] This is basically indistinguishable from our standard on direct review of the sufficiency of the evidence. *See Farris v. State*, 753 N.E.2d 641, 647 (Ind. 2001) ("We will not reweigh the evidence or assess the credibility of witnesses. Rather, we look [only] to the evidence and reasonable inferences [from it] that support the verdict . . . ."). In other words, with respect to a motion for judgment on the evidence, the trial court would have been in precisely the same position after Dunham rested as it was after the State rested, no matter the exculpatory value of whatever evidence Dunham presented in between. Failure to move a second time thus cannot have prejudiced Dunham.

[16] It is true that, in ruling on motions to correct error following a jury verdict, the "thirteenth juror" principle imposes on trial courts a duty to weigh conflicting evidence. *State v. Taylor*, 863 N.E.2d 917, 920 (Ind. Ct. App. 2007). However,

Dunham's trial counsel never moved to correct error after the jury verdict, and Dunham does not claim on appeal that failure to do so was objectively professionally unreasonable. Even if he had, he could not have pointed to any record evidence in support of such a claim.

[17] For these reasons, Dunham's ineffective assistance claim fails. We note that any post-conviction challenge to his lawyer's trial performance is now precluded. *Woods v. State*, 701 N.E.2d 1208, 1220 (Ind. 1998).

## II. *Abuse of Discretion at Sentencing*

[18] We may review a sentence for abuse of the sentencing court's discretion. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007). Claims for "failure to 'properly weigh'" aggravating and mitigating factors lie beyond such review, *id.* at 491, but a sentencing court abuses its discretion by applying an aggravating factor that is "improper as a matter of law." *Id.* Where a defendant maintains his innocence in good faith, it is improper as a matter of law to weigh that fact in aggravation of his sentence. *Sloan v. State*, 16 N.E.3d 1018, 1027–28 (Ind. Ct. App. 2014); *Kien v. State*, 782 N.E.2d 398, 412 (Ind. Ct. App. 2003), *trans. denied*. However, even if a sentencing court has improperly applied an aggravator, we will uphold a sentence greater than the advisory if supported by proper aggravators and we are confident the sentence would have been the same had the improper aggravator not been found. *Baumholser v. State*, 62 N.E.3d 411, 417 (Ind. Ct. App 2016), *trans. denied*.

Dunham claims the sentencing court improperly weighed his continuing profession of innocence in aggravation of his sentence. Assuming without deciding that Dunham did so in good faith, still Dunham is not entitled to relief. Both from the bench and in its sentencing order, the court clearly noted which factors it found in aggravation: Dunham's criminal history, Appellant's App. p. 53; Tr. Vol. II, p. 28; the fact that J.B. was younger than twelve at the time of the molestation, Appellant's App. p. 54, Tr. Vol. II, p. 29; and Dunham's position of trust over J.B. Appellant's App. p. 54; Tr. Vol. II, p. 29. From the bench, the court then "additionally . . . note[d]," Tr. Vol. II, p. 29, and in its order "also consider[ed]," Appellant's App. p. 54, the high risk of re-offense given in the presentence investigation report predicated on Dunham's profession of innocence. The court expressly considered this fact in the context of defense counsel's argument that maintaining innocence cannot properly aggravate a sentence. Appellant's App. p. 54; Tr. Vol. II, pp. 29-30.

Thus, it is not even clear that that the court counted Dunham's profession of innocence against him at all. The court was careful to separate out the re-offense risk assessment from its list of aggravating factors, and to note the impropriety of maintaining innocence as an aggravator. Moreover, Dunham's seven-year sentence was enhanced by one year above the six-year advisory for Level 4 felonies. *See* I.C. § 35-50-2-5.5 (level 4 felony sentencing). Given the presence of three other, unquestionably valid aggravators — two major (the victim's age and the perpetrator's position of trust) and one minor (Dunham's criminal history) — and the little aggravating weight, if any, given by the court

to the re-offense risk assessment, we are confident that Dunham's lightly enhanced sentence would have been the same even without any consideration whatever of the presentence investigation report.

## Conclusion

Dunham's trial counsel was not ineffective, and the sentencing court did not abuse its discretion. The judgment against Dunham is therefore affirmed.

Affirmed.

Baker, J., and Pyle, J., concur.