

**FILED**

Aug 26 2024, 9:09 am

**C L E R K**
Indiana Supreme Court
Court of Appeals
and Tax Court



I N T H E

# Court of Appeals of Indiana

Kenneth Ratliff,

*Appellant-Defendant*

v.

State of Indiana,

*Appellee-Plaintiff*

---

August 26, 2024

Court of Appeals Case No.
24A-CR-107

Appeal from the Porter Superior Court

The Honorable Jeffrey W. Clymer, Judge

Trial Court Cause No.
64D02-2104-F2-3540

---

**Opinion by Judge Mathias**
Judges Riley and Felix concur.

**Mathias, Judge.**

[1] Kenneth Ratliff appeals his convictions for Level 3 felony burglary, Level 3 felony rape, and Class A misdemeanor battery. He also appeals his sentence. Ratliff raises three issues for our review, which we restate as follows:

> 1. Whether the trial court clearly erred when it concluded that the prosecutor did not intentionally "goad" Ratliff into moving for a mistrial.
>
> 2. Whether Ratliff's conviction for Class A misdemeanor battery is contrary to Indiana's protection against substantive double jeopardy.
>
> 3. Whether Ratliff's sentence is inappropriate in light of the nature of the offenses and his character.

[2] We affirm in part, reverse in part, and remand with instructions for the trial court to vacate Ratliff's conviction and sentence for Class A misdemeanor battery.

## Facts and Procedural History

[3] In the spring of 2020, J.B. met Ratliff through a mutual friend. Ratliff stopped by J.B.'s apartment in Valparaiso a couple of times per month to give the mutual friend a ride. Ratliff visited J.B.'s apartment about five times.

[4] In the early morning hours of April 15, 2021, J.B. woke to the sound of loud banging on her front door. J.B. went downstairs, looked out a window next to

the front door, and yelled, "Who's out there?" Tr. Vol. 5, p. 169. Ratliff responded, "Ken." *Id.* J.B. recognized Ratliff's voice.

[5] J.B. told Ratliff "to leave and go home." *Id.* at 170. Ratliff then punched through the window where J.B. was standing, reached inside her apartment, and unlocked the front door. He cut his forearm in the process. J.B. was screaming, and Ratliff told her to "Shut up." *Id.* at 171. He then grabbed her and forced her back up the stairs to her bedroom. While doing so, he was hitting J.B.'s head and face.

[6] In her bedroom, Ratliff "pushed" J.B. down onto her bed and removed her pants and underwear. *Id.* at 172. Ratliff pulled his pants down, and then he raped her. About an hour later, he fell asleep. Once Ratliff was asleep, J.B. escaped from her bedroom, grabbed her phone, and hid inside a closet. From inside the closet, she called police.

[7] Valparaiso Police Department Officers Peter Castillo and Matthew Zavacki were the first to respond to the scene. J.B. met them near her front door, where they observed the broken window along with glass on the ground. The officers also observed drops of blood going up the stairs. And, in J.B.'s bedroom, they caught Ratliff with his pants down while he was still asleep in the bed. Officer Castillo also noticed that Ratliff had a fresh wound on his right arm that was bleeding. The officers arrested Ratliff.

[8] J.B. was transported to a nearby hospital and examined. She had injuries to her face and head as well as to her genitals. A DNA analysis identified Ratliff's DNA in samples taken from, on, and in J.B.'s body.

[9] The State charged Ratliff in relevant part with Level 3 felony burglary, Level 3 felony rape, and Class A misdemeanor battery. Specifically, the last-amended information stated as follows:

> Count I
> Burglary (Level 3 Felony)
> I.C. 35-43-2-1(2)
>
> . . . Kenneth Ratliff . . . on or about April 15, 2021, did break and enter the building or structure of Victim #1 . . . with intent to commit a felony of in [sic] it and resulted in bodily injury to Victim #1 . . . .
>
> Count II
> Rape (Level 3 felony)
> I.C. 35-42-4-1(a)(1)
>
> . . . Kenneth Ratliff . . . on or about April 15, 2021, did knowingly or intentionally have sexual intercourse with Victim #1 . . . when Victim #1 was compelled by force or imminent threat of force . . . .
>
> * * *
>
> Count IV
> Battery (A Misdemeanor)
> I.C. 35-42-2-1(d)(1)

> . . . Kenneth Ratliff . . . on or about April 15, 2021, did
> knowingly or intentionally touch Victim #1 in a rude, insolent,
> or angry manner and resulted in bodily injury to Victim #1 . . . .

Appellant's App. Vol. 2, pp. 77-78 (bold, underlining, and capitalization removed).

[10]    In September 2023, the State filed two notices of intent to introduce evidence under Indiana Evidence Rules 404(b) and 412(c) regarding a prior alleged rape of J.B. by Ratliff in August 2020. Ratliff also filed a notice of intent to introduce that same evidence under Rule 412(c). The trial court held a hearing on the admissibility of any such evidence, after which the court ordered as follows:

> Prior [s]exual conduct with the Defendant, including the
> previous alleged Rape[:] the State argues that the alleged conduct
> is admissible under Indiana Rule of Evidence 404(b) [as] lack of
> mistake, etc. The Defendant argues it is admissible for
> impeachment under [Rule] 608. The Court finds that the
> Defendant may not introduce the evidence to impeach unless the
> State first introduces testimony. (Opens the door[.]) The
> Defendant did not argue . . . that he seeks to introduce the
> evidence . . . to prove consent. The evidence of alleged sexual
> conduct only with the Defendant may be introduced by the State
> under [Rule] 412(b)(1)(B).

*Id.* at 88.

[11]    Thereafter, Ratliff's jury trial began. In his opening statement, the prosecutor outlined the expected witness testimony. In doing so, the prosecutor stated that, in speaking with a detective about the April 15, 2021, events, J.B. told the detective "of another scenario where Ken had raped her." Tr. Vol. 3, p. 64.

Ratliff objected and moved for a mistrial on the ground that that "statement is very, very damning, Judge." *Id.* The prosecutor responded: "My understanding of your ruling was that . . . [,] if the State chooses to put that into evidence, that it's admissible." *Id.* The trial court overruled Ratliff's objection and request for a mistrial, stating "the State may introduce that evidence." *Id.* The prosecutor then told the jury: "You'll hear about this earlier report that [J.B.] made that the same Ken was in her apartment and raped her in August 2020," but, because "Ken's last name was unknown at that time . . . and [J.B.] did not wish to pursue charges due to fear of retaliation[,] . . . that case was dropped." *Id.* at 65. The prosecutor concluded his opening statement by stating that the instant charges would be "about an allegation in April of 2021 and an allegation in August of 2020." *Id.* at 66.

[12] The next morning, the trial court opened the proceedings by informing counsel that the court had reviewed the transcript of the prosecutor's opening statement. The court asked the prosecutor: "Aren't you . . . trying to argue [to] find him guilty this time because he wasn't found guilty last time he raped her?" Tr. Vol. 4, p. 3. The prosecutor responded that he was "not arguing that" and that, when J.B. testifies, in her "mind[] this [August 2020 incident] was a rape," and "she may use . . . that word." *Id.* The prosecutor added: "we had hearings on . . . 404([b]) and I was given permission by this Court to use that [evidence]. If the Court would have ruled otherwise, [I] wouldn't [have] presented [it to the] jury." *Id.* at 6. Ratliff renewed his motion for a mistrial, which the court then granted. In doing so, the court stated: "I don't find that the State did

anything intentional" in putting the court in the position of having to declare the mistrial. *Id.* at 8.

[13] Prior to the commencement of his second trial, Ratliff moved to dismiss the charges on double-jeopardy grounds. The court held a hearing on that motion and reaffirmed its prior finding that the prosecutor's opening statements were not intended "to goad the defendant into moving for a mistrial." *Id.* at 36. Instead, the court faulted itself for the circumstances, noting that "I . . . should have been clearer in my [pretrial evidentiary] rulings on prior sexual conduct, if any, between the defendant and the alleged victim," and that what the prosecutor "actually did isn't entirely inconsistent with what the order says." *Id.* at 39-40. Ratliff renewed his motion to dismiss at the commencement of his second trial, which the court denied.

[14] At Ratliff's second trial, J.B., responding and investigating officers, and medical experts testified for the State. After the parties had presented their evidence, the prosecutor explained how the evidence fit the charges as follows:

> We're going to start with Count I. . . . The defendant knowingly or intentionally broke and entered the building or structure of [J.B.] with the intent to commit a felony and the offense resulted in bodily injury to [J.B.] . . . .
>
> * * *
>
> [T]hat the offense resulted in bodily injury. We saw pictures of [J.B.]. We saw pictures from a few days later, bruising on her

face. We heard [J.B.'s] testimony, fractured nose. We saw the photos [from the hospital], the blood on her nose . . . .

Let's go to rape. Count II, the felony that was committed inside of [J.B.'s] apartment. The defendant . . . knowingly or intentionally had sexual intercourse with [J.B.] when [s]he was compelled by force or imminent threat of force. So what does that mean? Force or imminent threat of force? The punching on the stairs. [J.B.] screaming. The defendant saying shut up, beating her until she shut up. [J.B.] why did[n't] you get up and run away? Why didn't you get out? "I was scared he was going to beat me again." That's imminent threat of force.

. . . I'm arguing to you, there was force by the beating, clear by the injuries [J.B.] sustained, and there was also imminent threat of force. . . .

\* \* \*

Count IV, battery. The defendant knowingly or intentionally touched [J.B.] . . . in a rude, insolent, or angry manner which resulted in bodily injury to [J.B.] . . . . We heard [J.B.'s] testimony of what happened on the stairs. . . . Bodily injury, what does that mean? Pain. [J.B.] said she had pain. She was in shock. She was numb . . . while this was occurring but she had pain. You saw the blood under her nose, the bruises days later. [J.B.'s] testimony of a fractured nose. That's injury.

Tr. Vol. 5, pp. 246-49.

[15] Thereafter, the jury found Ratliff guilty of Level 3 felony burglary, Level 3 felony rape, and Class A misdemeanor battery, and the court entered its

judgment of conviction on those counts accordingly. After a sentencing hearing, the court found as follows:

> I did consider his criminal history and I did consider the fact that while he was on pretrial supervision from this court, he picked up a number of other charges, two domestic battery charges with two separate victims. So in terms of violence towards others, the jury found that Mr. Ratliff battered the victim in this case and he's charged—and Mr. Ratliff is presumed innocent unless and until he's proven guilty—but he's charged in two other cases in this court . . . . So I find as aggravators his prior criminal history and his subsequent criminal history while on pretrial release from this court as aggravators.
>
> As mitigators, I find none.

Tr. Vol. 6, p. 68. The court then sentenced Ratliff to an aggregate term of twenty-eight years with three years suspended to probation. This appeal ensued.

## 1. The trial court did not violate Ratliff's double-jeopardy rights by holding a second trial after the mistrial.

On appeal, Ratliff first asserts that the trial court violated his federal and state rights to be free from double jeopardy when the court held a second trial on the State's allegations after the court had granted Ratliff's motion for a mistrial in the first trial. Our Supreme Court has explained the law underlying Ratliff's double-jeopardy argument as follows:

> The Fifth Amendment provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V. Although a defendant's motion for a mistrial constitutes "a deliberate election on his part to forgo his

valued right to have his guilt or innocence determined before the first trier of fact," *United States v. Scott*, 437 U.S. 82, 93, 98 S. Ct. 2187, 57 L. Ed. 2d 65 (1978), the United States Supreme Court has provided a narrow exception that bars a second trial after a mistrial "where the governmental conduct in question is intended to 'goad' the defendant into moving for a mistrial." *Oregon v. Kennedy*, 456 U.S. 667, 676, 102 S. Ct. 2083, 72 L. Ed. 2d 416 (1982). The subjective intent of the prosecutor is the dispositive issue. *Wilson v. State*, 697 N.E.2d 466, 472 (Ind. 1998). Although a trial court's determination of prosecutorial intent is not conclusive for purposes of appellate review, its determination is "very persuasive." *Id.* at 473. "It is a factual determination that we review under a clearly erroneous standard." *Butler v. State*, 724 N.E.2d 600, 604 (Ind. 2000).

*Farris v. State*, 753 N.E.2d 641, 645-46 (Ind. 2001).[1]

[17]     Thus, the critical inquiry in determining whether a second trial is prohibited after the trial court has entered a mistrial on a defendant's motion is "whether the prosecutor brought about the mistrial with the intent to cause termination of the trial. If the State acted with intent to force the defendant into moving for a mistrial, the prohibition against double jeopardy bars a second prosecution." *Wilson*, 697 N.E.2d at 472 (quotation marks omitted). The Supreme Court of the United States has made the rationale for that rule clear: "where a defendant's mistrial motion is necessitated by judicial or prosecutorial impropriety *designed to avoid an acquittal*, reprosecution might well be barred."

---

[1] The constitutional right to be free from double jeopardy where a prosecutor "goads" the defendant into moving for a mistrial is also codified in Indiana. *See* Ind. Code § 35-41-4-3(b) (2020).

*Kennedy*, 456 U.S. at 678-79 (quoting *United States v. Jorn*, 400 U.S. 470, 485 n.12 (1971) (plurality opinion)) (emphasis added).

[18] Ratliff argues that the prosecutor's opening statements that Ratliff "had raped" J.B. on a prior, uncharged occasion and that the instant charges were "about" both the April 15, 2021, incident and prior incident were such flagrant violations of the law that the prosecutor must have intended to goad Ratliff into moving for the mistrial. *See* Tr. Vol. 3, pp. 64, 66. The prosecutor's statements certainly justified the entry of the mistrial. But the prosecutor also made the statements in his opening statement. The rule that prohibits retrial where the defendant had asked for a mistrial seeks to avoid gamesmanship by prosecutors who have concluded that the first trial is likely to result in an acquittal. *See Kennedy*, 456 U.S. at 678-79. It is difficult to imagine how that rule can be applied to a prosecutor's opening statement.

[19] Further, the trial court's finding that the prosecutor did not act with an intent to cause the termination of the first trial is supported by the record. Again, the statements were made during the prosecutor's opening statement, which suggests that his inappropriate comments were not intended to cause a mistrial. Further, the prosecutor made clear to the court that he thought he was acting in accordance with the court's pretrial evidentiary ruling regarding the prior incident. The trial court credited the prosecutor's explanation and agreed that its pretrial order was unclear. We therefore cannot say that the trial court's finding that the prosecutor did not have the intent to cause the mistrial is clearly

erroneous. The trial court did not violate Ratliff's double-jeopardy rights when it held his second trial.

## 2. Ratliff's conviction for Class A misdemeanor battery is contrary to Indiana's protection against substantive double jeopardy.

[20] Ratliff also argues that the trial court violated his substantive double-jeopardy rights when it entered judgment of conviction on either the Level 3 felony burglary or the Level 3 felony rape and also the Class A misdemeanor battery. We review such questions de novo. *A.W. v. State*, 229 N.E.3d 1060, 1064 (Ind. 2024). We limit our review of Ratliff's argument to his convictions for Level 3 felony rape and Class A misdemeanor battery.

[21] Indiana's protection against substantive double jeopardy prohibits "multiple convictions for the same offense in a single proceeding." *Id.* at 1066. To determine if a substantive double-jeopardy violation has occurred, we apply a "three-part test based on statutory sources . . . ." *Id.* The first step is to look to the statutory language of the offenses at issue; if that language "clearly permits multiple punishments," then "there is no violation of substantive double jeopardy." *Id.* (quotation marks omitted). Here, Ratliff and the State agree that the first step is not dispositive, and so we proceed to the second step.

[22] Under the second step, as clarified by our Supreme Court in *A.W.*, we look to the face of the charging information to discern if the factual bases identified for

the charges implicate our statutory definitions of an "included offense." *Id.* In particular, the Indiana Code defines an included offense as an offense that:

> (1) is established by proof of the same material elements or less than all the material elements required to establish the commission of the offense charged;

> (2) consists of an attempt to commit the offense charged or an offense otherwise included therein; or

> (3) differs from the offense charged only in the respect that a less serious harm or risk of harm to the same person, property, or public interest, or a lesser kind of culpability, is required to establish its commission.

I.C. § 35-31.5-2-168. As our Supreme Court further clarified, an offense is an included offense under that statute where the charging information states that the "means used" to commit the alleged greater offense "include all of the elements of the alleged lesser included offense." *A.W.*, 229 N.E.3d at 1067 (quotation marks omitted).

[23] Here, aside from names and dates, the face of the charging information for the Level 3 felony rape and Class A misdemeanor battery allegations simply tracks the statutory language of the offenses. Appellant's App. Vol. 2, pp. 77-78; *see also* I.C. §§ 35-42-2-1(d)(1), 35-42-4-1(a)(1) (2020). Thus, the Class A misdemeanor battery allegation stated that Ratliff had knowingly or intentionally "touche[d] [J.B.] in a rude, insolent, or angry manner," while the Level 3 felony rape allegation stated that Ratliff had knowingly or intentionally

had sexual intercourse with J.B. when she was "compelled by force or imminent threat of force." Appellant's App. Vol. 2, pp. 77-78; *see also* I.C. §§ 35-42-2-1(d)(1), 35-42-4-1(a)(1) (2020).

[24] That language alone does not demonstrate that the two offenses were separate offenses. The means used to commit the greater offense could have included all of the elements of the alleged lesser offense based on the face of the information. For example, the means used to show that J.B. had been "compelled by force or imminent threat of force" in the rape allegation could include all of the elements required to demonstrate the battery allegation.

[25] Thus, the State's charging information fails to make clear that the factual bases for those two offenses were different. In such circumstances, our Supreme Court held in *A.W.* that the charging information is to be deemed ambiguous, and those ambiguities "must [be] construe[d] . . . in the defendant's favor" and against the State as the author of the charges. 229 N.E.3d at 1069. Further, those ambiguities require us to conclude that the defendant has established "a presumptive double jeopardy violation" at this step in the analysis. *Id.* For its part, the State agrees that Ratliff has demonstrated a presumptive double-jeopardy violation.

[26] With Ratliff having established a presumptive double-jeopardy violation, in step three of our analysis the burden is on the State to rebut that presumption. That is, the State must demonstrate that it made clear to the fact-finder at trial that the apparently included charge was supported by independent evidence such

that the State made a "distinction between what would otherwise be two of the 'same' offenses." *Id.* at 1071. However, if the State's reliance on the evidence at trial "show[s] only a single continuous crime, and one statutory offense is included in the other," the State may not obtain cumulative convictions. *Id.* (quotation marks omitted).

[27] Here, the State cannot demonstrate a distinction between the rape allegation and the battery allegation based on how the State asked the jury to apply the evidence. In its attempt to rebut the presumptive double jeopardy violation, the State asserts that "the act of sexual intercourse" was an act "separate and distinct from [Ratliff] . . . beating J.B. on the stairwell." Appellee's Br. at 27. But the State's argument disregards the statutory requirement that the sexual intercourse here was "compelled by force or imminent threat of force." *See* I.C. 35-42-4-1(a)(1) (2020). And, as to that requirement, the prosecutor made clear to the jury that the means used by Ratliff to compel J.B. by force or imminent threat of force to engage in sexual intercourse was the same evidence that the prosecutor argued supported the battery allegation: Ratliff striking J.B. about the head and face on their way up the stairs after he had broken into her apartment.

[28] As the means used to compel J.B. by force or imminent threat of force to submit to sexual intercourse with Ratliff included all the elements of the Class A misdemeanor battery allegation, and as the evidence relied on by the prosecutor shows only a single continuous crime of Level 3 felony rape, Ratliff's convictions for both offenses is contrary to law.

[29] Where a defendant is found guilty of both the greater offense and an included offense, the proper procedure is to vacate the conviction for the included offense and to enter a judgment of conviction and sentence only upon the greater offense. *See, e.g., Demby v. State*, 203 N.E.3d 1035, 1046 (Ind. Ct. App 2021), *trans. denied*. We therefore reverse Ratliff's conviction for Class A misdemeanor battery and remand to the trial court for it to vacate that conviction and his one-year concurrent sentence accordingly.

### 3. Ratliff's sentence is not inappropriate.

[30] Last, Ratliff argues that his aggregate sentence of twenty-eight years with three years suspended to probation is inappropriate in light of the nature of the offenses and his character.[2] Under Indiana Appellate Rule 7(B), we may modify a sentence that we find is "inappropriate in light of the nature of the offense and the character of the offender." Making this determination "turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008). Sentence modification under Rule 7(B), however, is reserved for "a rare and exceptional case." *Livingston v. State*, 113 N.E.3d 611, 612 (Ind. 2018) (per curiam).

---

[2] As Ratliff's sentence on the Class A misdemeanor battery conviction was ordered to run concurrently with his sentence on the Level 3 felony rape conviction, our holding in part 2 of this opinion does not affect his aggregate sentence.

[31] When conducting this review, we generally defer to the sentence imposed by the trial court. *Conley v. State*, 972 N.E.2d 864, 876 (Ind. 2012). Our role is to "leaven the outliers," not to achieve what may be perceived as the "correct" result. *Id.* Thus, deference to the trial court's sentence will prevail unless the defendant persuades us the sentence is inappropriate by producing compelling evidence portraying in a positive light the nature of the offense—such as showing restraint or a lack of brutality—and the defendant's character—such as showing substantial virtuous traits or persistent examples of positive attributes. *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015).

[32] Ratliff appeals his convictions for two Level 3 felonies. A Level 3 felony carries a sentencing range of three to sixteen years, with an advisory term of nine years. I.C. § 35-50-2-5(b). The trial court ordered Ratliff to serve twelve years on his Level 3 felony burglary conviction and sixteen years on the Level 3 felony rape conviction, with three of those sixteen years suspended to probation. The court ordered those sentences to be served consecutively.

[33] We cannot say that Ratliff's aggregate sentence is inappropriate, and his arguments on appeal simply seek to have our Court substitute its judgment for the trial court's, which we will not do. *See Stephenson*, 29 N.E.3d at 122. Ratliff presents no compelling evidence that portrays the offenses in a positive light or shows that his character has substantial virtuous traits or positive attributes. We therefore affirm his sentence. *See id.*

## Conclusion

[34] For all of these reasons, we affirm Ratliff's convictions and sentences for Level 3 felony burglary and Level 3 felony rape. However, we reverse his conviction for Class A misdemeanor battery, and we remand with instructions for the trial court to vacate that conviction and its sentence.

[35] Affirmed in part, reversed in part, and remanded with instructions.

Riley, J., and Felix, J., concur.

ATTORNEY FOR APPELLANT

James E. Harper
Harper & Harper, LLC
Valparaiso, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

Jodi Kathryn Stein
Deputy Attorney General
Indianapolis, Indiana